## HARDWARE MUT. INS. CO. v. DUNWOODY et al.

No. 12960.

United States Court of Appeals Ninth Circuit.

Feb. 13, 1952.

Bert W. Levit, David C. Bogert and Long & Levit, San Francisco, Cal., for appellant.

Oscar Samuels and Tevis Jacobs, San Francisco, Cal., (Robert Sills, San Francisco, Cal., of counsel), Peters & Peters, Chico, Cal., for appellees.

Before DENMAN, Chief Judge, ORR, Circuit Judge, and LEMMON, District Judge.

LEMMON, District Judge.

In a complaint for declaratory relief, the appellant, a corporation formed under the laws of Minnesota, asked that it be adjudged not liable under a certain fire insurance policy. Each appellee is a citizen of California.

So far as they are pertinent to our view of the case, the facts have been stipulated as we here recite them.

On or about September 24, 1948, the appellant issued and delivered to the appellee Mildred A. Dunwoody a policy of fire insurance covering two buildings in Chico, California, in the amount of $10,000. The buildings were totally destroyed by fire on April 8, 1949. The fire was due to unknown causes.

The appellee Dunwoody was the owner of the buildings. She had leased them to the Grand Rapids Furniture Company for 50 years, commencing on January 1, 1944,

by a written lease dated November 1, 1943. The interest of the lessee was transferred to the appellees Harold A. Goldman, Myrtle Goldman, Harold F. Baruh, and Doris G. Baruh, hereinafter referred to as the lessee-appellees, who have continued as lessees up to the present time. By certain supplemental agreements between the appellee Dunwoody as owner and lessor, and the lessee-appellees, the lessee-appellees Myrtle Goldman and Doris Baruh were purportedly released from some of the terms of the original lease, but the lessee-appellees Harold Goldman and Harold Baruh remained bound by all the terms of the original lease. The complaint, however, prays that if the appellant is adjudged liable to the appellee Dunwoody, the Court will determine the amount of that liability and enter judgment for that amount against all four of the lessee-appellees.

The lease provided that in the event that any of the buildings standing on the premises should be partly or totally destroyed by fire, "the same shall be restored by the Tenant at its own expense without unnecessary delay".

At the time of the trial, replacement of the buildings had not yet been undertaken, having been delayed by the lessee-appellees with the consent and approval of the appellee Dunwoody.

The appellee Dunwoody filed an amended answer and cross-complaint, in which latter she demanded payment of the face value of the policy. The lessee-appellees also filed an amended answer. In view of the limited ambit of the single specification of error, the various pleadings need not be further summarized here.

The judgment of the court below decreed that the appellee Dunwoody recover the sum of $10,000 from the appellant, with interest, and that upon payment by the appellant to the appellee Dunwoody of the said sum, the appellant would not be entitled to be subrogated to any of the rights of the appellee Dunwoody, or at all, against the lessee-appellees. It adjudged that the lessee-appellees Harold A. Goldman and Harold F. Baruh are legally bound to perform the obligations of the above lease of November 1, 1943, including paragraph 12, under which those two appellees "are obligated to restore the buildings destroyed".

The appellant has specified only one error; namely, that the trial court erred in holding that, "upon the payment of $10,000 by appellant to appellee Dunwoody pursuant to the judgment of the court, appellant is not entitled to be subrogated pro tanto to the rights of appellee Dunwoody against appellees Harold Goldman and Harold Baruh under the lease, whereby the last-named appellees are obligated to restore the premises".

On the other hand, the lessee-appellees do not question their obligation to rebuild the destroyed structures, but they "insist that no additional person be given the right to interfere in the performance, or non-performance, or any negotiations in relation to, or any adjustment of, said obligation".

## 1. The Subrogation Paragraph

The policy contains a paragraph relating to the appellant's right of subrogation under certain conditions. That paragraph, the construction of which we believe is pivotal in the determination of this controversy, is as follows: "Subrogation. If this company shall claim that the fire was caused by the act or neglect of any person or corporation, this company shall, on payment of the loss be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment."

The appellant concedes, as indeed it must, that it is "undisputed" that "The fire was due to causes unknown". In other words, the "company" does not "claim that the fire was caused by the act or neglect of any person or corporation".

## 2. The Subrogation Provision in the Policy Constitutes the Sole Measure of the Parties' Rights in That Regard.

The appellant, however, seeks to escape the effect of the foregoing subrogation paragraph in the policy, by a resort to the

following argument: "Where, as here, the subrogation claimed by the insurer arises from contract rather than from tort liability, the most that can be said is that the policy is silent upon the subject and that subrogation should be granted or denied under the general equitable principles applicable under the facts of the case."

Such a contention, ingenious as it may seem at first blush, runs counter to that time-worn but sound principle of legal construction, be it statutory or contractual: *Expressio unius est exclusio alterius*.

Furthermore, it appears that the California legislature itself has adopted a construction of this subrogation provision contrary to that now urged by the appellant.

The paragraph in question is taken verbatim from the California Standard Form Fire Insurance Policy, adopted by the state legislature in 1935, and in force when the policy in question was executed, on August 31, 1948, and throughout the one-year period during which it remained in effect. See Deering's California Codes, Insurance, Section 2071.

In the Statutes of 1949, c. 556, sections 1 and 2, however, the foregoing provision was repealed, and the following new paragraph was added to the Standard Form Fire Insurance Policy:

### "Subrogation

"This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company."

This new paragraph makes it clear that the insurance company may now exact from the insured an assignment of his right to recover from any one, regardless of whether the third party is at fault. Had the new provision, which went into effect on July 1, 1950, been in force when the policy was executed—on August 31, 1948—the appellant, on paying the loss, could have demanded from the appellee Dunwoody "an assignment of all right of recovery against any party", regardless of whether such party was guilty of "neglect". If that right

had already been given to an insurer by the Standard Form as it stood in 1948, the enactment of the 1949 amendment was a work of supererogation.

It is well settled that the right of subrogation "may be modified or extinguished by contract." Northern Trust Co. v. Consolidated Elevator Co., 1919, 142 Minn. 132, 171 N.W. 265, 268, 4 A.L.R. 510, 515. See also 29 Am.Jur. 999–1000, Insurance, section 1335; 50 Am.Jur. 699, Subrogation, section 9.

In Merchants Fire Assur. Corporation v. Hamilton Company, 1949, 76 R.I. 294, 69 A.2d 551, 554, 555, the Court considered a subrogation provision substantially like the one now before us. In that case it was said:

"The respondent contends that such a right of subrogation as the complainant is here claiming, being personal in nature, may be modified, curtailed or defeated by a provision in the insurance contract entered into by the insured and the insurer. The respondent argues that the pertinent provision in the policy of insurance as set out in the bill of complaint, when properly construed, shows that the parties limited the complainant's right of subrogation by requiring as a condition to the maintaining of such a right that the complainant must, at or before the time of payment of the loss, assert its claim that the fire bringing about such loss was caused by the act or neglect of some third person.

"An examination of the cases called to our attention on the above point, in the judgment of a majority of the court, tends to show that the weight of such authority as there is supports the respondent's position that the provision in the insurance contract we have under consideration should be construed as requiring that the insurer make such a claim as above indicated and make it at or before the time it pays the loss if it desires later to enforce its right of subrogation.

"In Fire Association of Philadelphia v. Schellenger, 84 N.J.Eq. 464, 94 A. 615, 616, where the facts closely resembled those in the present cause and where the complainant was denied relief, a provision in a fire-

policy in exactly the same language as the provision now before us was construed as follows: 'The rights of the parties to this litigation, therefore, must depend upon the meaning of the provision of the policy which deals with the matter of subrogation. It is plain from a reading of this part of the contract that the parties to it intended that the right of the insurer, in case it paid the loss, should not be an absolute, but a conditional one; the condition being that the insurer should "claim that the fire was caused by the act or neglect" of some third person. * * *'

\* \* \* \* \* \*

"Upon consideration it is the opinion of a majority of the court that the provision of the policy before us should be construed in accordance with the holdings in the cases relied on by the respondent, namely, to the effect that it is the intent and meaning of such provision that the right of the insurer to subrogation is not absolute but is on the condition that it make claim, at or before the time it pays the loss, that the fire was caused by the act or neglect of some third person. When issued the policy becomes the contract of the parties. It is reasonable to assume that the provision was inserted in the policy for some purpose. From its terms it does not appear to be a mere confirmatory restatement of the equitable principles governing subrogation generally, nor does it act to enlarge or increase them. *On the contrary, when read as a whole its apparent object is to limit and place a condition upon the exercise of such right of subrogation."* (Emphasis supplied.)

See also Firemen's Ins. Co. v. Georgia Power Co., 1935, 181 Ga. 621, 183 S.E. 799, 800; Home Ins. Co. v. Hartshorn, 1922, 128 Miss. 282, 91 So. 1, 2–3; Firemen's Fund Ins. Co. v. Thomas, 1934, 49 Ga.App. 731, 176 S.E. 690, 692.

*3. Conclusion*

We are in accord with the foregoing view. Accordingly, we conclude that the Court below was correct in holding that upon the payment of $10,000 by the appellant to the appellee Dunwoody pursuant to the judgment of the court, the appellant is not entitled to be subrogated pro tanto to the rights of the appellee Dunwoody against the lessee-appellees Harold Goldman and Harold Baruh under the lease, whereby the last-named appellees are obligated to restore the premises.

Affirmed.