**AETNA INSURANCE COMPANY, a corporation, Plaintiff-Appellant,**

v.

**CRAFTWALL OF IDAHO, INC., an Idaho corporation, d/b/a Heritage Cabinets, Defendant-Appellee.**

No. 84–3774.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1985.

Decided April 9, 1985.

Hugh T. Lackie, Evans, Craven & Lackie, P.S., Spokane, Wash., Michael E. McNichols, Clements, Brown & McNichols, Lewiston, Idaho, for plaintiff-appellant.

Robert William Burns, Burns & Ricketts, Seattle, Wash., for defendant-appellee.

Before FARRIS, ALARCON, and FERGUSON, Circuit Judges.

FARRIS, Circuit Judge:

Aetna Insurance Company appeals the grant of summary judgment of the U.S. District Court of the District of Idaho,

Ryan, J., in favor of Craftwall of Idaho, Inc. Aetna seeks to recover $291,890 which it paid to an insured landlord, Hahn Enterprises, as a result of a fire allegedly caused by the negligence of Craftwall, one of Hahn's commercial tenants.

In August or September 1980, Paul Hayman, the general manager of Hahn, orally agreed with Bruce Sweeney, an officer of Craftwall, to lease space to Craftwall. Between September and November 6, 1980, Craftwall occupied a portion of Hahn's building pursuant to the oral lease. A fire occurred on November 6, damaging Craftwall's leasehold and other portions of the building, which Hahn had leased to two other commercial tenants. At the time of the fire, Craftwall and Hahn had not entered into a written lease.

Aetna paid Hahn Enterprises for the fire damage and brought this subrogation action based upon diversity jurisdiction. 28 U.S.C. § 1332. Craftwall moved to dismiss Aetna's action on the ground that Craftwall was an implied co-insured of the landlord, and therefore immune from a subrogation action. Craftwall moved in the alternative for certification of a legal issue to the Idaho Supreme Court or for abstention. These motions were converted into a motion for summary judgment to allow the court to consider the affidavits of the two parties to the oral lease.

The district court granted Craftwall's motion for summary judgment, finding that Craftwall was an implied co-insured and therefore immune from the subrogation action. Aetna timely appeals; we have jurisdiction pursuant to 28 U.S.C. § 1291.

ANALYSIS

■ Craftwall recognizes that whether the parties to the oral lease decided who would provide insurance for the premises is an unresolved issue of fact. Because we conclude that this issue of fact is material, we reverse the grant of summary judgment. Idaho R.Civ.P. 56(c); *Casey v. Highlands Insurance Co.*, 100 Idaho 505, 600 P.2d 1387, 1389 (1979). We employ a *de novo* review to determine this question of

state law. *Matter of McClinn*, 739 F.2d 1395, 1398 (9th Cir.1984) (en banc).

I. *Was insurance obtained for the benefit of the tenant as well as the landlord?*

■ To determine whether the tenant should be considered a co-insured, courts have looked to whether the insurance policy was obtained for the benefit of the tenant as well as the landlord. Once the landlord has agreed to carry insurance for the benefit of both parties, the subrogated insurer may not sue the tenant for fire damage resulting from the tenant's negligence. *See, e.g., Page v. Scott*, 263 Ark. 684, 567 S.W.2d 101, 103 (1978); *West American Insurance Co. v. Pic Way Shoes of Central Michigan, Inc.*, 110 Mich. App. 684, 313 N.W.2d 187, 188 (1981), citing *Woodruff v. Wilson Oil Co.*, 178 Ind.App. 428, 382 N.E.2d 1009 (1978); *see also Pendlebury v. Western Casualty & Surety Co.*, 89 Idaho 456, 406 P.2d 129, 136 (1965) (insurer barred from subrogation action against own insured). Even if the parties merely discussed insurance generally, without specific reference to fire insurance, fire insurance should be presumed to be covered by the agreement. *Evans v. Sack*, 320 Mass. 84, 67 N.E.2d 758, 760 (1946); 49 *Am.Jur.2d*, Landlord and Tenant § 272 at 287 (1970); 51C *Corpus Juris Secundum*, Landlord and Tenant § 374 at 1000 n. 68 (1968).

A. The intent of the parties.

■ To determine whether the insurance policy was obtained for the mutual benefit of tenant and landlord, the courts have first looked to the intent of the parties. *See, e.g., General Mills, Inc. v. Goldman*, 184 F.2d 359, 363 (8th Cir.1950), *cert. denied*, 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683 (1951); *Page v. Scott*, 567 S.W.2d at 103; *Cerny-Pickas & Co. v. C.R. Jahn Co.*, 7 Ill.2d 393, 131 N.E.2d 100, 102–03 (1955); *Rock Springs Realty, Inc. v. Waid*, 392 S.W.2d 270, 278 (Mo.1965); *Acquisto v. Joe R. Hahn Enterprises*, 95 N.M. 193, 619 P.2d 1237, 1239 (1980); *Wichita City*

*Lines, Inc. v. Puckett,* 156 Tex. 456, 295 S.W.2d 894, 899 (1956); *Rizzuto v. Morris,* 22 Wash.App. 951, 592 P.2d 688, 690 (1979).

The facts thus far developed, however, are insufficient to support a determination of intent in favor of either party. The two affidavits directly pertaining to the oral lease add up to little more than a "swearing contest." Mr. Hayman, the general manager for Hahn, avers that no agreement regarding insurance was ever expressed between the parties; Mr. Sweeney, the negotiator for Craftwall, testified that Hahn agreed to provide insurance on the building. Nor can the parties' intent about the oral lease be reliably deduced from the terms of the written lease which Craftwall alleges was to replace the oral lease. Although Craftwall contends that Hahn agreed to replace the oral lease with a written lease identical to that between Hahn and the previous tenant in the building, Hahn claims that it contemplated preparing a different lease for Craftwall. Furthermore, the record suggests that Craftwall may not even have been aware of the terms of the written lease at the time it negotiated the oral lease. These unresolved issues of material fact, indicative of the parties' intent about the coverage of the landlord's insurance policy, must be resolved in the district court.

Craftwall argues that any question about the parties' intent was resolved when the district court assumed, as it must on Craftwall's motion for summary judgment, that Hahn's affidavit was correct and the parties had never discussed insurance. The fact that the parties never actually discussed insurance does not preclude a factual finding that both parties intended that the landlord—or the tenant—or each of them—would carry insurance in the absence of any express agreement. Because courts have unanimously found that the parties' intent is the first and controlling indicia to be examined in deciding whether a tenant is an implied co-insured, we REVERSE and REMAND for trial so that the district court may develop additional evidence to ascertain the parties' intent. *Accord, Casey v. Highlands Insurance Co.,*

100 Idaho 505, 600 P.2d 1387, 1389 (1979) (reversing grant of summary judgment when factual issue remained on whether appellant insurer made material representation to appellee insured on coverage of insurance policy).

## II. *Should the tenant be presumed to be a co-insured?*

Our remand to determine the parties' intent is particularly appropriate because it may obviate the need to reach an issue of first impression in Idaho. The district court held that when the parties' intent is unclear, Idaho state courts are likely to presume the tenant to be an implied co-insured of the landlord's policy.

### A. Cases presuming the tenant to be a co-insured.

No Idaho court has determined whether a tenant will be presumed to be a co-insured when the parties' intent is unclear. Other states are deeply divided on the issue. A few recent cases have held that the landlord is presumed to carry insurance for the tenant's benefit in the absence of an express agreement to the contrary. *See, e.g., Alaska Insurance Co. v. RCA Alaska Communications, Inc.,* 623 P.2d 1216, 1218 (Alaska 1981); *Rock Springs Realty, Inc. v. Waid,* 392 S.W.2d at 277; *Sutton v. Jondahl,* 532 P.2d 478, 482 (Okl.App.1975); *accord,* R. Keeton, *Insurance Law,* § 4.4(b) at 210 (1971) (suggesting adoption of rule to bar landlord's insurer from proceeding against negligent tenant when lease is ambiguous and insurance policy is silent or ambiguous).

Other courts have presumed that a landlord's express covenant to insure is for the benefit of both landlord and tenant, since it would be unnecessary for a landlord to agree with his tenant to insure if the insurance was to be for the landlord's sole benefit. *Fry v. Jordan Auto Co.,* 224 Miss. 445, 80 So.2d 53, 58 (1955); *Monsanto Chemical Co. v. American Bitumuls Co.,* 249 S.W.2d 428, 432 (Mo.1952); *accord, Newport News Shipbuilding & Drydock*

*Co. v. United States,* 34 F.2d 100, 106 (4th Cir.1929); *see generally,* M. Friedman, Landlords, Tenants and Fires—Insurer's Right of Subrogation, 43 *Cornell L.Q.* 225, 228 & n. 12 (1957).

B. Cases presuming the tenant *not* to be a co-insured.

Other courts have rejected this last argument, *see* 43 *Cornell L.Q.* at 228 n. 13, and a host of cases have presumed the tenant to be liable for fire damage resulting from his own negligence in the absence of an express and clear provision to the contrary. *See, e.g., Sears, Roebuck & Co. v. Poling,* 248 Iowa 582, 81 N.W.2d 462 (1957) (holding tenant liable despite exception to tenant's covenant to return in good condition for "loss by fire"); *Poslosky v. Firestone Tire & Rubber Co.,* 349 S.W.2d 847 (Mo. 1961); *Acquisto v. Joe R. Hahn Enterprises,* 619 P.2d at 1239 (holding tenant liable because "[i]n the absence of an agreement between the parties specifying which of them will carry fire insurance for the benefit of both parties, or an express clause in the lease relieving a party from his own negligence, each party must bear the risk of loss for his own negligence."); *Galante v. Hathaway Bakeries, Inc.,* 6 App.Div.2d 142, 176 N.Y.S.2d 87, 95 (1958); *Winkler v. Appalachian Amusement Co.,* 238 N.C. 589, 79 S.E.2d 185 (1953); Million, *Real and Personal Property,* 33 N.Y.U.L.Rev. 552, 585 (1958) ("Without a governing provision in the lease, the lessee would, of course, be liable for such damage.").

C. Policy arguments support both sides.

Despite each party's attempt to distinguish away unfavorable cases, we conclude that the precedent is sufficiently well-developed on each side to bar a decision on the basis of prior authority alone.[1] Each side can point to decisions in its favor made at the highest court of a state. Therefore, even if we were to reach the question whether a tenant should be presumed to be a co-insured in the absence of any indication of the parties' intent, our decision would ultimately turn on the conflicting policy arguments raised by the various state supreme courts that have discussed the issue. "Since subrogation is an equitable doctrine, equity principles apply in determining its availability." *Alaska Insurance Co.,* 623 P.2d at 1217; *Rock River Lumber Corp. v. Universal Mortgage Corp.,* 82 Wis.2d 235, 262 N.W.2d 114, 117 (1978).

Without ruling on the issue, we note that the policies relied upon by each line of cases may not be easily reconcilable. Some cases, particularly the older ones, have exhibited a reluctance to release the tenant from liability for his own negligence, particularly when, as here, there is no express contractual release. *See, e.g., Maiatico v. Hot Shoppes, Inc.,* 287 F.2d 349, 351 (D.C. Cir.1961); *Acquisto,* 619 P.2d at 1240; *Wichita City Lines v. Puckett,* 295 S.W.2d at 899; *see generally,* Matan, *Liability for Loss by Fire Among Insurer, Tenant and Landlord,* 18 Ohio St. L.J. 423, 425–26 (1957). This result is consistent with the fact that at common law, under a lease without any express covenant to repair or return the leasehold in good condition, the tenant was liable for negligent fires. *See United States v. Bostwick,* 94 U.S. 53, 68, 24 L.Ed. 65 (1876); *Miller v. Miller,* 217 Miss. 650, 64 So.2d 739 (1953); *see also* Annot., 10 A.L.R.2d 1023 (1950).

On the other hand, more recent cases have considered the tenant to have paid for his possible negligence in advance, through rent payments adjusted to cover the landlord's fire insurance expenditures. *Liberty Mutual Fire Insurance Co. v. Auto Spring Supply Co.,* 59 Cal.App.3d 860, 131

---

**1.** Aetna cites *Agra-By-Products, Inc. v. Agway, Inc.,* 347 N.W.2d 142, 152 (N.Dak.1984), for the proposition that even if a tenant is found to be a co-insured for its own leasehold interest, it may still be liable for damage to other parts of the landlord's property. Craftwall cites *Bonneville on the Hill Co. v. Sloane,* 572 P.2d 402 (Utah 1977) for the proposition that once a tenant is found to be a co-insured, it will escape liability for *all* portions of the landlord's property. The cases cannot be distinguished from each other, and serve as equally authoritative precedent for opposite conclusions.

Cal.Rptr. 211, 214–15 (1976); *Rock Springs Realty*, 392 S.W.2d at 278; *Sutton*, 532 P.2d at 482; *see also Rizzuto*, 592 P.2d at 692 n. 3 (rejecting argument that public policy is violated by allowing a tenant to exculpate himself from liability for his own negligence); *Cerny-Pickas*, 131 N.E.2d at 104 (same); 18 Ohio·St. L.J. at 432; *but see Page v. Scott*, 567 S.W.2d at 103–04 (rejecting "the fiction that by paying the rent, the lessee paid the insurance premium," and noting that "more often than not the market, i.e., supply and demand, is the controlling factor in fixing and negotiating rents."). Courts have also held that when a landlord has insured against "loss by fire," the tenant may reasonably expect that all losses by fires of negligent origin will also be covered. *Alaska Insur. Co.*, 623 P.2d at 1219; *Sutton*, 532 P.2d at 482; *Rizzuto*, 592 P.2d at 691.

Furthermore, to hold a tenant liable would encourage multiple insurance policies on the same building by the landlord and each of his tenants. *See Agra-By-Products, Inc. v. Agway, Inc.*, 347 N.W.2d 142, 148 (N.Dak.1984), quoting *Cerny-Pickas*, 131 N.E.2d at 103; *see* 43 Cornell L.Q. at 227 n. 9. In addition, courts have noted that permitting a subrogation action would give insurers a windfall, since "[f]ire insurers expect to pay fire losses for negligent fires and their rates are calculated upon that basis." *Rock Springs Realty*, 392 S.W.2d at 278; *see Liberty Mutual Fire Insur. Co.*, 131 Cal.Rptr. at 215; Million, *Real and Personal Property*, 33 N.Y.U.L. Rev. 552, 586 (1958).

Aetna correctly points out, however, that if the tenant were shielded from a subrogation suit, the commercial tenant's own liability insurer would also acquire a windfall, since it first receives a premium to insure the tenant for his own negligent acts, but then escapes having to pay for an anticipatable fire loss. Aetna also notes that the collateral source rule would be undermined if the court released the tenant essentially because the landlord had insurance. Finally, Aetna argues that if the tenant were held to be a co-insured, the court would be rewriting Aetna's insurance contract with Hahn, which unambiguously provides that Hahn alone has been insured.

### III. *Certification.*

■  With policy arguments on both sides and the state courts divided, it appears appropriate for this issue to be certified to the Idaho Supreme Court. *See* Idaho Appellate Rule 12.1 (certification appropriate for "a controlling question of law" for which "there is no controlling precedent in the decision of the Idaho Supreme Court" and "an immediate determination of the Idaho law would materially advance the orderly resolution of the litigation."); *Meckert v. Transamerica Insurance Co.*, 742 F.2d 505, 506 (9th Cir.1984) (certifying issue of scope of insurance clause to Idaho Supreme Court). However, because the issue whether a tenant will be deemed a co-insured need never be reached if the district court finds additional evidence of the parties' intent, we remand to the district court first, with directions that the district court later certify the question if the parties' intent cannot be divined through additional fact-finding.

### IV. *Conclusion.*

An issue of material fact remains on whether the parties to the oral lease intended Hahn to provide insurance for both parties' benefit. The grant of summary judgment is therefore REVERSED, and the case REMANDED to determine the parties' intent. If the district court is ultimately unable to ascertain the parties' intent, it shall CERTIFY the question whether a tenant will be presumed to be a co-insured of the landlord absent any indication of the parties' intent.

REVERSED AND REMANDED WITH DIRECTIONS.