CHARLES E. ANDERSON *et al.*, Plaintiffs-Appellants, v. DAVID PETERS *et al.*, Defendants-Appellees.

Third District   No. 3—85—0478

Opinion filed March 26, 1986.

HEIPLE, J., dissenting.

Paul Perona and Vincent D. Brolley, both of Holmstrom & Green, of Peru, for appellants.

Sidney S. Deutsch, of Deutsch & Deutsch, of Rock Island, for appellees.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:
David Peters and Beth Peters, the defendants, pursuant to an oral lease were tenants in an apartment owned by the plaintiffs, Charles E. Anderson and Elaine M. Anderson. On January 7, 1984, a fire occurred in the apartment which caused extensive damage. The defendants had exclusive control of the apartment and the fire started when defendants' cat knocked over a lighted candle which defendants had left unattended. The property of the plaintiffs was damaged in

the amount of $16,223 and this sum was paid to the plaintiffs by their insurer, American Family Insurance Company.

The plaintiffs Andersons filed suit against the defendants alleging negligence. This complaint was dismissed with leave to refile. The American Family Insurance Company joined with the plaintiffs Andersons and filed an amended complaint on March 1, 1985, which contained three counts. Two counts were against the defendants individually for their alleged negligence and one count was against them jointly on the basis of *res ipsa loquitur.*

After various motions by the parties were filed, the trial court dismissed the complaint of the plaintiffs and this appeal ensued.

Several issues are raised in this appeal; however, the paramount issue is whether a tenant who is in possession of premises pursuant to an oral agreement is liable to damages to the premises caused by his own negligent conduct to the landlords' insurer who brings a subrogation action.

■ It is well-established law that exculpation agreements between a landlord and tenant commonly referred to as "yield up" clauses if properly drafted in a written lease may result in a tenant being liable for damage to premises which is caused by his negligence. (*Englehardt v. Triple X Chemical Laboratories, Inc.* (1977), 53 Ill. App. 3d 926, 369 N.E.2d 67.) In the instant case, we are not confronted with a situation where the relationship between the landlord and tenant was defined by a written agreement. Their relationship was created by an oral agreement that the defendants would be tenants of the landlords, the plaintiffs Andersons, for an agreed-upon rental payment.

■ It may be stated as a basic proposition in the law of landlord and tenant that a tenant is liable to the landlord in damages for any injury to premises resulting from his wrongful acts or his failure to exercise due care. 49 Am. Jur. 2d *Landlord & Tenant* sec. 934, 935 (1970); Annot., 10 A.L.R.2d 1012, 1016 *et seq.* (1950); *Cerny-Pickas & Co. v. C. R. Jahn Co.* (1955), 7 Ill. 2d 393, 131 N.E.2d 100.

The plaintiffs have reminded this court of its decision in the case of *Ford v. Jennings* (1979), 70 Ill. App. 3d 219, 387 N.E.2d 1125, wherein it was held that a sublessee could not rely on an exculpatory provision in the original lease to bar liability for his negligence as against the lessor of leased property. In the *Ford* case the lease contained a "yield up clause" whereby the tenant was required to yield up the premises to the lessor at the termination of the lease in as good condition as when entered upon by the tenant "loss by fire or inevitable accident, and ordinary wear excepted." The original tenant

sublet the premises to the defendant Jennings, and subsequently the building was destroyed by fire. This court held that the "yield up clause" exculpated the original tenant, but since no privity of contract existed between the sublessee (Jennings) and the original landlord, damages could be recovered from the sublessee because of his negligence.

The plaintiffs equate the status of the defendants in the instant case with the status of the sublessee in the *Ford* case, in that neither of them were protected by a lease containing an "exculpatory yield up clause" and therefore this court in order to be consistent should hold that the defendants in the instant case should be liable for damages. The *Ford* case recognizes that in common law a tenant is responsible for damages to leased premises resulting from his own negligence, and since sublessee had no privity of contract with the primary landlord, the common law rule was applicable.

We do not find that the *Ford* case is so sweepingly persuasive as to compel this court to dogmatically apply its result as a determination of the issue presented in the instant case. The case of *Ford* and the one we now consider are distinguishable by one important fact. In *Ford* it was the primary landlord (actually the estate of the primary landlord) seeking to recover from a sublessee who did not have the benefit of an exculpatory "yield up" clause. In the instant case, the primary plaintiff is the American Family Insurance Company, which attempts to recover its payment for fire loss to the plaintiffs Andersons by bringing a subrogation action against the defendant tenants. We are unaware of any Illinois case which has determined the question whether the tenant in possession of premises by virtue of an oral lease is liable for his negligence to the landlord's insurer.

The issue presented in the case before us has a potential for consequences so far reaching that we are persuaded that public policy considerations must be considered in reaching a determination. Such a recognition of the public policy effects was made by the United States Court of Appeals in the case of *Aetna Insurance Co. v. Craftwall of Idaho, Inc.* (9th Cir. 1985), 757 F.2d 1030. This cited case presented a situation which is for all purposes identical to the one in the instant case. In the *Aetna* case the reviewing court theorized that the question as to the subrogation rights of a landlord's insurer to be of such importance that the same should be certified to the Idaho Supreme Court for determination. We note with interest that the circuit court of appeals in the *Aetna* case made the following observation:

"Therefore, even if we were to reach the question whether a tenant should be presumed to be a co-insured in the absence of

any indication of the parties' intent, our decision would ultimately turn on the conflicting policy arguments raised by the various state supreme courts that have discussed the issue."
(757 F.2d 1030, 1033.)

Since subrogation is an equitable doctrine, equity principles apply in determining its availability. *Alaska Insurance Co. v. RCA Alaska Communications, Inc.* (Alaska 1981), 623 P.2d 1216; *Rock River Lumber Corp. v. Universal Mortgage Corp.* (1978), 82 Wis. 2d 235, 262 N.W.2d 114.

In directing our attention specifically to public policy provisions, we direct our attention to an Oklahoma case which presents a situation and question identical to that presented in the instant case. (See *Sutton v. Jondahl* (Okla. App. 1975), 532 P.2d 478.) In *Sutton* the landlord's fire insurance carrier sued a tenant and his 10-year-old son to recover a fire loss caused by the son's experimentation with an inexpensive chemistry set given to him by his father. The tenant was in possession of the damaged premises by virtue of an oral lease. A jury returned a verdict favoring the insurance company against only the father. The Oklahoma court of appeals reversed the trial court on several grounds and specifically held that while there was sufficient evidence to make a jury case out of actionable negligence in the father's failure to supervise the child's experiments, the insurer was not entitled to subrogation since the law considers a tenant as a co-insured of the landlord absent an express agreement between them to the contrary.

The foregoing determination by the court of appeals of Oklahoma was grounded upon policy consideration. We have closely examined the opinion in *Sutton* and have concluded that a goodly portion of the same should be adopted by this court, and hence we set forth the following which pertains to the rights of subrogation by an insurer in cases such as the one we are considering:

"Defendant's other proposition is that the verdict is not supported by evidence and is contrary to law. The argument is that the evidence fails to establish negligence on the part of the defending father pitched as it was on a failure to properly perform his duty to supervise his son whom the jury found innocent of negligence. While evidence bearing on the breach of such duty was indeed scarce we cannot say there was an absence. What we do say, however, is that there is no evidence to establish Central Mutual Insurance Company has been actionably damaged by such breach. The reason is that under the circumstances thus far disclosed by the record here, the insur-

ance company has no subrogational rights against the tenant of its policyholder.

The principle of subrogation was begotten of a union between equity and her beloved—the natural justice of placing the burden of bearing a loss where it *ought to be*. Being so sired this child of justice is without the form of a rigid rule of law. On the contrary it is a fluid concept depending upon the particular facts and circumstances of a given case for its applicability. To some facts subrogation will adhere—to others it will not. Home Owners' Loan Corp. v. Parker, 181 Okl. 234, 73 P.2d 170 (1937).

Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest. Here the landlords (Suttons) purchased the fire insurance from Central Mutual Insurance Company to protect such interests in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental.

The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to themselves purchase the coverage. To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy. Perhaps

this comes about because the companies themselves have accepted coverage of a tenant as a natural thing. Otherwise their insurance salesmen would have long ago made such need a matter of common knowledge by promoting the sale to tenants of a second fire insurance policy to cover the real estate.

Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary. The company affording such coverage should not be allowed to shift a fire loss to an occupying tenant even if the latter negligently caused it. New Hampshire Ins. Co. v. Ballard Wade, Inc., 17 Utah 2d 86, 404 P.2d 674 (1965). A parallel effect was reached in Hardware Mut. Ins. Co. v. Dunwoody, 194 F.2d 666 (9th Cir. 1952)." 532 P.2d 478, 481-82.

For the reasons set forth the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

BARRY, J., concurs.

JUSTICE HEIPLE, dissenting:

The majority opinion chooses to exonerate tenants who negligently cause fires and damage leased premises. Such decision, rooted in public policy considerations expressed in cases from other jurisdictions, is both poor public policy and is contrary to the common law of Illinois.

At common law a tenant is responsible for damage to leased premises resulting from his own negligence. (*Ford v. Jennings* (1979), 70 Ill. App. 3d 219, 387 N.E.2d 1125.) However, Illinois courts have given a liberal interpretation to yield-up clauses, holding that exceptions for fire damage includes fires caused by the tenant's negligence. (*Cerny-Pickas & Co. v. C. R. Jahn Co.* (1955), 7 Ill. 2d 393, 131 N.E.2d 100.

*Cerny-Pickas* and the cases that follow it are good law. The instant case, however, is distinguishable in that there is no exculpatory clause of any kind or any other evidence that traditional landlord-tenant law would not apply. As it was aptly stated in a case which liberally construed an exculpatory clause:

"[T]he key factor in determining whether the parties intended

to exculpate lessee negligence is the allocation of insurance burdens as evidenced by the terms of the lease." (*Continental Casualty Co. v. Polk Brothers, Inc.* (1983), 120 Ill. App. 3d 395, 401, 457 N.E.2d 1271, 1276.)

As the tenant admits in his brief, there was no mention of insurance or tenant liability for negligence during lease negotiations. Accordingly, it is incomprehensible how it can be concluded that the landlord intended to exonerate the tenant from his own negligence or carry him as a co-insured on the insurance policy.

The effect of the majority's decision would be that whenever the landlord insures the premises against fire loss, the tenant could not be held liable for negligently causing the fire. To begin with, that is simply not the law in Illinois. In *Ford,* the landlord had insured the premises and exculpated the tenant from his own negligence. However, we held that a sublessee who negligently caused a fire could not have the benefit of that provision. Were we to accept the majority's reasoning, *Ford* would be effectively reversed. Even though defendant there was a tenant of a tenant, he would, under the reasoning of the majority here, still be insulated from liability, since the gist of the majority's holding is that a contract of fire insurance constitutes a *de facto* waiver by the landlord of recovery for a fire caused by the negligence of the occupier of the premises.

The Oklahoma case relied on so heavily by the majority (*Sutton v. Jondahl* (Okla. App. 1975), 532 P.2d 478), is simply wrong. The cited portion of the case is laced with lofty preachments about natural justice and equity. Properly defined, of course, everyone agrees with natural justice and equity. As used in *Sutton,* however, such pronouncements are a dodge and an evasion of the real issue, which is a fundamental tenet of common law. That is, that people should be responsible for their own negligence.

The *Sutton* case is further flawed by a gross misstatement of the law. It is held that "the law considers the tenant as a co-insured of the landlord absent an express agreement to the contrary." (532 P.2d 478, 481.) Once the *Sutton* court made this holding, the case was over. In fact, this is the exact opposite of Illinois law as expressed in *Cerny-Pickas.* The tenant is only a "co-insured" when there is something in the lease which can be interpreted as exonerating him from his own negligence.

Moreover, the procuring by the landlord of fire insurance should not be elevated to something which it is not. Contrary to the assumption in *Sutton,* we have no evidence that the tenant effectively paid for the insurance through his rents. As was stated in *Page v. Scott*

(1978), 263 Ark. 684, 687-88, 567 S.W.2d 101, 104:

"Such a fiction ignores the fact that more often than not the market *** is the controlling factor in fixing and negotiating rents."

Illinois law is supportive of the tenants' right to contract in their lease agreements to shift the consequences of their negligence in causing fires. That is clear. We have no such contract in the instant case, however, and it is not the function of the court to either make a new contract for the parties or to find a contract where none exists.

In the final analysis, insurance, which the majority finds to be paramount, is almost irrelevant. There is no question that a guest or a business invitee on premises is liable for negligently causing fire or damages to the premises. Are tenant occupiers under an oral lease entitled to different consideration? A logical extension of the majority's reasoning in this case would extend exoneration to anyone negligently causing a fire if the owner had a fire insurance policy. Perhaps it could even be extended to protect the negligent tenant, guest or business invitee when the owner didn't have insurance, since it might be reasoned that such occupiers had a right to assume that the owner had taken out insurance for their protection. And, if that proposition is accepted, why limit exoneration to negligence causing fires? Why not extend it to all negligence? That is the absurdity of the majority position.

Accordingly, I dissent. This case should be reversed and remanded for further proceedings.