PAUL K. McGINNIS *ex rel.* C.I.E. SERVICE CORPORATION, Subrogee, Plaintiff-Appellant, v. EARL LaSHELLE, JR., *et al.*, Defendants-Appellees.

Second District   No. 2—87—0456

Opinion filed February 2, 1988.—Rehearing denied March 15, 1988.

L. Vernon Frye, of Besse, Frye, Arnold, Miller & Lancaster, P.C., of Sterling, for appellant.

James T. Ferrini, Richard R. Winter, William N. Howard, and Mayer Goldberg, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

The plaintiff, Paul McGinnis, appeals from an order of the trial court dismissing his amended complaint which, on behalf of the plaintiff's insurance company, C.I.E. Service Corporation (C.I.E.), sought subrogation for fire loss from the defendants, Earl LaShelle, Jr., and Ann LaShelle. On appeal, the plaintiff contends that the trial court erred in dismissing his complaint because (1) the defendants were liable for damages to the leased premises resulting from their own negligence; and (2) the defendants were liable for damages to the leased premises resulting from their breach of a contractual obligation to purchase fire insurance, and the fire loss was caused by the defendants' negligence.

On May 1, 1985, the plaintiff and defendants entered into a one-year lease agreement for the Scenic Ridge Supper Club (supper club) located in Thomson, Illinois. The lease agreement stated *in toto*:

> "This agreement made this day, May 1, 1985 between Paul K. McGinnis and Earl LaShelle Jr. and Ann LaShelle of Savanna, Illinois, to lease the Scenic Ridge Supper Club for one (1) year from this date, May 1, 1985 to May 1, 1986.
>
> They must pay for license, taxes, and insurance when they are due. They must also pay for upkeep of property.
>
> The purchaser of the lease agrees that they will not commit waste on the above premises and that they will keep and maintain the premises in the same condition of repair as it exists at present time and maintain the equipment and fixtures in the same condition as it exists at the present time."

At the time the lease was executed, the plaintiff had obtained an in-

surance policy for the supper club through C.I.E. On January 2, 1986, a fire destroyed the supper club. Pursuant to its policy, C.I.E. paid the plaintiff $64,000 for damages resulting from the fire.

On May 23, 1986, the plaintiff filed a subrogation complaint which alleged that the defendants' negligent act of thawing pipes with a kerosene heater caused the fire at the supper club. After his complaint was dismissed, the plaintiff was granted leave to file a two-count amended complaint.

Count I alleged that, under the lease agreement, the defendants were obligated to purchase fire insurance to insure the protection of the supper club and that the defendants failed to do so. Count I further alleged that it was the defendants' obligation and duty to maintain the supper club in a manner which would not have endangered the premises and that the defendants would return the supper club in the same condition in which it was leased except for ordinary wear and tear. Count I then stated that, notwithstanding these duties, the defendants negligently caused the fire which destroyed the supper club, and as a direct and proximate result of the defendants' negligence, the plaintiff suffered $64,000 in damages.

Count II of the plaintiff's amended complaint alleged that the plaintiff assigned his interest in any claim against the defendants to C.I.E. Count II then essentially realleges the same facts and negligence theory raised in count I.

After hearing argument, the trial court ultimately dismissed both counts of the plaintiff's complaint. In dismissing count I with prejudice, the trial court found that the equitable doctrine of subrogation did not apply to the facts of this case because a tenant is considered a coinsured of the landlord absent an agreement to the contrary. The trial court reasoned that equity and fundamental justice require that when fire insurance is provided for a dwelling, it protects the insurable interests of all joint owners including the possessory interests of tenants in the absence of a contrary agreement.

In dismissing count II with prejudice, the trial court found that although count II set forth an assignment theory as the basis for recovery, it was factually a subrogation claim. The plaintiff appeals from the order dismissing both counts of his complaint.

■ The principal issue raised on appeal is whether a landlord's insurer is entitled to subrogation from a tenant where a lease agreement obligated the tenant to pay the premiums on that policy, and the fire loss was a result of the tenant's alleged negligence. Our analysis of the applicable law in conjunction with the particular facts of this case leads us to conclude that C.I.E. was not entitled to subrogation

from the defendants.

As the plaintiff correctly states, in the absence of an express covenant to the contrary, a tenant is liable for damages to the leased premises resulting from the failure to exercise due care. (See *Cerny-Pickas & Co. v. C. R. Jahn Co.* (1955), 7 Ill. 2d 393, 396-97; *First National Bank v. G.M.P., Inc.* (1986), 148 Ill. App. 3d 826, 828.) The plaintiff contends that the lease agreement placed an obligation upon the defendants to purchase fire insurance, which they failed to do. The plaintiff further contends that because the lease agreement did not expressly exculpate the defendants for fire loss resulting from their own negligence, they were liable for the damages to the supper club. Before deciding whether the plaintiff may recover under a negligence theory, we first consider whether C.I.E. may recover from the defendants under the theory of subrogation.

In *Anderson v. Peters* (1986), 142 Ill. App. 3d 182, an insurer sought subrogation from a tenant who allegedly caused a fire in the leased premises. The landlord and tenant orally agreed to the terms and conditions under which the tenant would occupy the premises. In concluding that the insurer could not maintain a subrogation action against a tenant whose own negligent conduct caused damage to the leased premises, the court stated:

> " 'The principle of subrogation was begotten of a union between equity and her beloved—the natural justice of placing the burden of bearing a loss where it *ought to be*. Being so sired this child of justice is without the form of a rigid rule of law. On the contrary it is a fluid concept depending upon the particular facts and circumstances of a given case for its applicability. To some facts subrogation will adhere—to others it will not. [Citation.]
>
> Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a coinsured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest.' " (Emphasis in original.) *Anderson*, 142 Ill. App. 3d at 186, quoting *Sutton v. Johndahl* (Okla. App. 1975), 532 P.2d 478, 481-82.

The court further stated:

> " 'Basic equity and fundamental justice upon which the equi-

table doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary. The company affording such coverage should not be allowed to shift a fire loss to an occupying tenant even if the latter negligently caused it. [Citations.]' " *Anderson*, 142 Ill. App. 3d at 187, quoting *Sutton v. Johndahl* (Okla. App. 1975), 532 P.2d 478, 482.

It is clear that the defendants, as tenants, were coinsureds of the plaintiff. There is no right of subrogation against a person who holds the status of an additional insured or coinsured. (6A J. Appleman, Insurance Law & Practice §4055, at 76 (Supp. 1987).) It follows that C.I.E. did not have a right of subrogation against the defendants because of their status as coinsureds, and, therefore, the trial court properly dismissed the plaintiff's complaint.

The plaintiff attempts to distinguish *Anderson*, noting that the lease in *Anderson* was oral and concerned residential property. The plaintiff fails to explain why the principles which the *Anderson* court applied to oral leases concerning residential property should not be applied to written leases concerning commercial property. We believe that the rule set forth in *Anderson* applies to situations where the landlord's insurer has brought a subrogation claim against a tenant who negligently caused damage to the leased premises. In our view, the type of premises leased or the nature of the lease executed has no bearing on the *Anderson* rule.

■ The plaintiff further contends that *Anderson* does not apply because the parties to the lease agreement in this case, unlike the parties in *Anderson*, expressly agreed that the defendants were to purchase fire insurance. Therefore, according to the plaintiff, the *Anderson* rule does not apply where the parties have expressly agreed as to who shall bear the risk of loss. We disagree with the plaintiff's interpretation of the lease agreement.

In interpreting the lease provisions, our primary objective is to ascertain and give effect to the intent of the parties while considering the instrument as a whole. (*Continental Casualty Co. v. Polk Brothers, Inc.* (1983), 120 Ill. App. 3d 395, 398.) The intent of the parties must be ascertained from the language of the lease, and words should be given their common and ordinary meaning. (*Anest v. Bellino* (1987), 151 Ill. App. 3d 818, 821.) If the language is ambiguous, evidence such as the conduct of the parties after the tenant takes possession may be considered in order to explain the ambiguity. *Blakemore*

*v. Lake Holiday Property Owners' Association* (1986), 144 Ill. App. 3d 199, 204.

■ Here, the relevant provision of the lease agreement states that the defendants must pay for the license, taxes, and insurance *when they are due*. We believe that this provision means that the defendants were obligated to pay the premiums on insurance policies which were procured for the benefit of the leased premises. Neither this provision nor any other provision placed an obligation on the defendants *to purchase* fire insurance. Moreover, the plaintiff's conduct of purchasing fire insurance the same day on which the lease was executed evinces the intent of the parties to place the responsibility for purchasing fire insurance on the plaintiff and to place the responsibility for paying the policy premiums on the defendants. We conclude that neither this provision nor any other provision of the lease agreement expressly shifted the liability for the loss due to fire to the defendants.

Consequently, we determine that the trial court properly dismissed the plaintiff's complaint because the equitable doctrine of subrogation does not allow an insurer to recover from a coinsured.

■ Even if the equitable doctrine of subrogation were applicable to the facts of this case, we believe the trial court properly dismissed the plaintiff's complaint. It is well settled that where the parties to a lease agreement have contemplated the procurement of fire insurance and agreed to look to the insurance proceeds in the event of a loss by fire, then, in the absence of an *express* agreement to the contrary, the tenant is not liable to the landlord for fire damages regardless of whether the fire was a result of the tenant's negligence. (See *Cerny-Pickas*, 7 Ill. 2d at 397-98 (and its progeny).) The basic public policy underlying our case law is that it would be illogical for both the landlord and tenant to procure separate insurance policies on the same property interest. (See *Windsor at Seven Oaks v. Kelly* (1983), 113 Ill. App. 3d 978, 980.) As we have already stated, the lease agreement in this case did not contain an *express* agreement shifting the liability for loss due to fire to the defendants. Additionally, from the lease agreement and conduct of the parties, it is clear that the parties contemplated the procurement of fire insurance to protect the supper club in the event of loss due to fire. Therefore, we would be justified in holding that the defendants were not liable for damages to the supper club under a negligence theory.

In the alternative, the plaintiff contends that even if his recovery is barred under a negligence theory, he properly stated a cause of action for breach of contract. In his brief, the plaintiff asserts that the

defendants breached their agreement to purchase fire insurance and, therefore, are liable for damages forseeably resulting from that breach. We deem this contention without merit.

■ As the plaintiff correctly states, a tenant may be liable to his/ her landlord for damages resulting from the breach of a lease provision requiring the tenant to procure fire insurance. (See *Artoe v. Cap* (1986), 140 Ill. App. 3d 980.) Under our interpretation of the lease agreement, we have concluded that the lease provision in question merely required that the defendants pay the premiums on fire insurance. In his complaint, the plaintiff has not alleged that the defendants failed to pay these premiums when they became due. Therefore, we must conclude that the defendants have not breached the lease agreement.

■ Finally, in his reply brief, the plaintiff contends that the defendants breached the provision of the lease agreement requiring them not to commit waste and to return the property in the same condition as it presently existed. Because this argument was raised for the first time in the plaintiff's reply brief, we deem it waived on review. See 107 Ill. 2d R. 341(e)(7); *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 393.

Accordingly, for the reasons expressed above, we affirm the trial court's dismissal of the plaintiff's amended complaint.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.