**REGENT INSURANCE COMPANY, Plaintiff,**

**v.**

**ECONOMY PREFERRED INSURANCE COMPANY and Economy Fire and Casualty Company, Defendants.**

**No. 90–1102.**

United States District Court, C.D. Illinois, Peoria Division.

Oct. 19, 1990.

Gregory A. Cerulo, Peoria, Ill., for plaintiff.

Gary D. Nelson, Peoria, Ill., for defendants.

## ORDER

MIHM, District Judge.

Before the Court are a Motion by the Plaintiff ("Regent") for summary judgment (# 7) and a Cross–Motion by the Defendant ("Economy") for summary judgment (# 9). The Court denies the Plaintiff's Motion (# 7) and grants the Defendant's Motion (# 9).

## BACKGROUND

This litigation involves a Complaint for a declaratory judgment brought under Rule

---

57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. This Court has jurisdiction based upon complete diversity between the parties pursuant to 28 U.S.C. § 1332. Regent is incorporated in Wisconsin, and it has its principal place of business in Wisconsin. Economy is incorporated in Illinois, and it has its principal place of business in Illinois. The amount in controversy, exclusive of interest and costs, is in excess of $50,000.

Prior to September 29, 1987, Economy issued a policy to James L. Sniff for the premises located at 12201 Woodcrest Drive in Dunlap, Illinois. Prior to September 29, 1987, the Plaintiff issued a policy of insurance to Patricia A. Schultz–Benker for the same location.

James L. Sniff rented an apartment on those premises to Patricia A. Schultz–Benker. On September 29, 1987, a fire occurred at the premises causing extensive damage. The Defendants allege that the fire was caused by the negligence of the tenant, Patricia A. Schultz–Benker.

A written agreement exists between Regent and Economy which requires that any dispute involving a valid subrogation claim between their two companies not in excess of $100,000 be submitted to arbitration.

## DISCUSSION

In this case, although there is no written agreement which would give the landlord subrogation rights against the tenant, Economy contends that a valid subrogation right exists under its agreement with Regent and that it has a right to submit the claim to arbitration. Regent contends that, absent an express agreement, no subrogation rights exist for a landlord against a tenant for damages which were allegedly caused by the negligence of the tenant.

In *McGinnis v. LaShelle*, 116 Ill.Dec. 631, 519 N.E.2d 699, 166 Ill.App.3d 131 (2nd Dist.1988), the court held that a landlord's insurer had no right of subrogation against commercial tenants whose negligence allegedly caused a fire at the premises, absent an express agreement between the parties that the tenant was not a co-insured under the landlord's insurance policy.

Pursuant to this case, Regent argues that the tenant and landlord in this case were co-insured and that Economy has no right of subrogation which would be subject to the arbitration agreement between Regent and Economy.

Contrary to the Second District, the Third District Appellate Court held in *Fire Insurance Exchange v. Geekie*, 128 Ill.Dec. 616, 534 N.E.2d 1061, 179 Ill.App.3d 679 (3rd Dist.1989) that, in the absence of an express agreement to the contrary, a tenant could be held liable for his own negligence in causing a fire and, therefore, the landlord's insurer could maintain a subrogation action against the tenant for losses due to the tenant's negligence in causing the fire. The parties concede that the *Geekie* case overruled a previous Third District decision which was in accord with the holding in *McGinnis*. See, *Anderson v. Peters*, 96 Ill.Dec. 489, 491 N.E.2d 768, 142 Ill.App.3d 182 (3rd Dist.1986). The Illinois Supreme Court has not yet addressed this issue.

Economy contends that Regent has contractually agreed to forego litigation and to allow an arbitrator to resolve all questions and disputes with respect to "any fire subrogation claim." (See, Fire and Allied Lines Subrogation Arbitration Agreement, Art. 1). Therefore, Economy asserts that this Court should dismiss this case before considering the other issues.

█ This Court disagrees. The Court understands that Regent has agreed to arbitrate *any* fire subrogation claim; however, there is a legal dispute over whether state law allows a subrogation claim to be asserted in this type of case. This Court believes that the subrogation agreement does not require arbitration until it is determined that the claim is subject to arbitration.

█ Next, Economy contends that this Court should abstain from deciding a difficult question of state law which bears on policy problems of substantial public import. See, *Smith v. Metropolitan Property and Liability Insurance*, 629 F.2d 757, 758–759 (2nd Cir.1980); *Colorado River*

Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Economy asserts that Regent is asking this Court to disregard important Illinois public policy which favors arbitration. Economy maintains that most, if not all, insurance companies enter into arbitration agreements in order to facilitate the resolution of disputes in a speedy, informal, and inexpensive manner and that many of these disputes are subrogation actions against a negligent tenant.

This Court does not agree that it should abstain. Certainly, if this Court were ruling on the factual details of coverage of the insurance policy, the public policy favoring the arbitration of these disputes would be disturbed. However, the question for this Court to decide is the coverage of the arbitration agreement under state law, which is essentially a question of law. Ultimately, even if an arbitration order were entered, the parties to the agreement would still have a right to challenge in the courts whether or not they had agreed to submit a particular issue to arbitration (unless, of course, they submitted the issue of the coverage of the agreement under state law to arbitration).

The general rule is that:

Abstention is ... appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case at bar.

Colorado River, 424 U.S. at 814, 96 S.Ct. at 1244. This Court does not believe that this case involves a policy problem of state law of substantial public import whose importance transcends the result in the case at bar. This is the type of question federal courts are required to resolve every day in cases which involve diversity jurisdiction. Furthermore, the Supreme Court has noted that the difficulties of ascertaining what the state courts might hereafter determine does not afford a sufficient ground for a federal court to decline to exercise its jurisdiction to decide a case which is properly brought before it for a decision. Meredith

v. Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943).

■ Next, Economy asserts that a federal trial court in a diversity case is bound to follow the decisions of the appellate court in its own district when the appellate courts diverge. See, Zakarian v. Prudential Insurance Company of America, 652 F.Supp. 1126, 1135 (N.D.Ill.1987). Therefore, the Defendants assert that this Court should follow the rule of the Third Appellate District in Geekie.

Although the Zakarian case holds that, under Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it is bound to follow the decisions of the appellate court in its own district when the appellate courts diverge, this Court has found no support for that proposition in Seventh Circuit law, and the Zakarian court does not cite any Seventh Circuit authority for this proposition. Zakarian, 652 F.Supp. at 1135. In addition, the cases cited in footnote 19 of the Zakarian opinion, Abbott Laboratories v. Granite State Insurance Company, 573 F.Supp. 193, 196–200 (N.D.Ill.1983) and Rizzo v. Means Services, Inc., 632 F.Supp. 1115, 1131–1133 (N.D.Ill.1986), do not cite Seventh Circuit authority for the rigid approach requiring a district court to follow the appellate court in its own district when the state appellate courts diverge. Id.

In Green v. J.C. Penney Auto Insurance Company, 806 F.2d 759 (7th Cir. 1986), the Seventh Circuit in dealing with this issue stated:

It is therefore useful at the outset to keep in mind our duty in a diversity case: we must apply the state law that would be applied in this context by the Illinois Supreme Court. (Citation omitted). Intermediate appellate court cases are useful but not binding evidence of what the Illinois Supreme Court would do in a similar case. (Citations omitted).

806 F.2d at 761; see also, American Dental Association v. Hartford Steam Boiler Inspection and Insurance Company, 625 F.Supp. 364, 366–367 (N.D.Ill.1985).

Further, the court in American Dental Association stated:

Thus, we conclude that we must try to reach the correct result by predicting how the Illinois Supreme Court would rule if faced with this issue. *The appellate court decisions provide us with important data for ascertaining the relevant Illinois law, and we must, of course, give them due consideration; however, we may disregard those decisions if we are convinced that the Illinois Supreme Court would decide otherwise.* (Citations omitted). This approach seems particularly appropriate where, as here, the disagreement among the districts is substantial.

*American Dental Association,* 625 F.Supp. at 367 (emphasis added). Thus, this Court will predict how it believes the Illinois Supreme Court would rule on this issue with due consideration to the relevant Illinois Appellate Court decisions.

Regent contends that the Illinois Supreme Court would adopt the reasoning and the holding of the *McGinnis* court and the *Anderson* court. Regent's position can be summed up by the *Anderson* court's discussion of subrogation. *See, Anderson,* 96 Ill.Dec. at 492–493, 491 N.E.2d at 771–772. In that discussion, the *Anderson* court stated:

The principle of subrogation was begotten of a union between equity and her beloved—the natural justice of placing the burden of bearing a loss where it ought to be. Being so sired this child of justice is without the form of a rigid rule of law. On the contrary, it is a fluid concept depending upon the particular facts and circumstances of a given case for its applicability. To some facts subrogation will adhere—to others it will not. *Homeowners Loan Corp. v. Parker,* 181 Okl. 234, 73 P.2d 170 (1937). Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. *This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest.* Here the landlords (Suttons) purchased the fire insurance from Central Mutual Insurance Company to protect such interest in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate of the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. *And of course it follows then that the tenant actually paid the premium as part of the monthly rental.* The landlords of course could have held out for an agreement that the tenants would furnish fire insurance on the premises. But they did not. They elected to themselves purchase the coverage. *To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting.* Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for their realty (as distinguished from the personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy. Perhaps this comes about because the companies themselves have accepted coverage of a tenant as a natural thing. Otherwise their insurance salesmen would have long ago made such need a matter of common knowledge by promoting the sale to tenants of a second fire insurance policy to cover the real estate.

*Id.* 96 Ill.Dec. at 492, 491 N.E.2d at 771 (emphasis added).

This Court disagrees with the reasoning in *Anderson* and *McGinnis* for the reasons given in the dissenting opinion of

the *Anderson* case and for the reasons give by the majority in the *Geekie* case. First, as Judge Heiple noted in the opinion of the court in *Geekie,* it is more equitable to place the burden of the loss where it ought to be—on the negligent party. *Geekie,* 128 Ill.Dec. at 617, 534 N.E.2d at 1062. Second, the *Anderson* and *McGinnis* courts held that the law considers the tenant as the co-insured of the landlord absent an express agreement to the contrary without the citation of any Illinois law. The court only cited the Oklahoma case of *Sutton v. Jondahl,* 532 P.2d 478 (1975). Generally, in Illinois, a tenant is responsible for damage to his leased premises resulting from his own negligence. *See, Cerny–Pickas and Company v. C.R. Jahn Company,* 7 Ill.2d 393, 396–397, 131 N.E.2d 100 (1955); *Ford v. Jennings,* 26 Ill.Dec. 295, 387 N.E.2d 1125, 70 Ill.App.3d 219 (1979); *First National Bank v. G.M.P., Inc.,* 102 Ill.Dec. 259, 499 N.E.2d 1039, 148 Ill.App.3d 826 (1986). The import of the *Cerny–Pickas* decision by the Illinois Supreme Court is that the tenant is only a co-insured when there is something in the lease which can be interpreted as exonerating him from his own negligence. *Cerny–Pickas,* 7 Ill.2d at 396–398, 131 N.E.2d 100; *Anderson,* 96 Ill.Dec. at 493–494, 491 N.E.2d at 772–773 (dissenting opinion).

However, Illinois courts have given a liberal interpretation to yield-up clauses, holding that exceptions for fire damage includes fires caused by the tenant's negligence. *Id.* In other words, often in lease agreements there are yield-up clauses which provide that the tenant is required to "yield-up the premises to the lessor at the termination of the lease in as good a condition as when entered upon by the tenant, loss by fire or inevitable accident, and ordinary wear excepted." *See, Ford v. Jennings,* 70 Ill.App.3d 219, 26 Ill.Dec. 295, 387 N.E.2d 1125. As the Defendants note, a lease of that nature would clearly exculpate the tenant from liability due to fire damages. However, there is no such exculpatory clause contained in the lease between the tenant and the landlord in this case. In fact, nowhere in the lease is there an express agreement which would exculpate the tenant from liability arising from her allegedly negligent acts. The yield-up clause in this case simply provides that the tenant shall "surrender the leased premises in as good a condition as they were at the beginning of the term, reasonable wear and tear excepted." Because the exculpatory clause clearly does not contain the word "fire," the common law rule that a tenant is liable for fire damage to the leased premises resulting from his negligence would be applicable. The tenant and the landlord could not be considered co-insureds in this case; therefore, pursuant to the agreement between the parties, this matter is subject to arbitration.

## CONCLUSION

In sum, this Court believes that the Illinois Supreme Court would apply the rule given in *Geekie* that, in the absence of an express agreement to the contrary, a tenant is liable for damages to the leased premises resulting from his failure to exercise due care. Because Economy has a valid subrogation claim against the tenant, the Court DENIES Regent's Motion for Summary Judgment (# 7) and GRANTS the Defendant's Cross–Motion for Summary Judgment (# 9). Thus, this case is DISMISSED so that it can proceed in arbitration for further resolution of any disputes regarding the subrogation claim.