K. EUGENE REICH *et al.*, Indiv. and d/b/a Gene's Men's Wear, *et al.*, Plaintiffs, v. MILDRED V. THARP *et al.*, Defendants (Dennis Hill *et al.*, for the use and benefit of Country Mutual Insurance Company, Cross-Claimants and Appellants; Mildred V. Tharp, Cross-Defendant and Appellee).

Fifth District   No. 5—86—0118

Opinion filed July 6, 1987.—Rehearing denied March 25, 1988.

HARRISON, J., dissenting in part.

Michael W. Klobnak, of Smith, McCollum & Riggle, of Flora, for appellants.

Brent D. Holmes, of Harlan Heller, Ltd., of Mattoon, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This appeal and cross-appeal arise ultimately out of an action brought for damages caused by a fire on December 25, 1980, that was alleged to have originated in the second-floor apartment of the defendant Mildred Tharp. The fire damaged not only the building in which her apartment was located but also personal property, namely, merchandise, dry goods, and materials, which was associated with the first-floor business, known as Hill's Shoe Store and Ready to Wear, operated by the defendants Dennis Hill and Carolyn Hill. The fire also damaged the nearby premises of the plaintiff Ruby Hester and the plaintiffs K. Eugene Reich and Latricia Reich, individually and d/b/a Gene's Men's Wear. At the time of the fire the Hills were purchasing from Mildred Tharp under a contract for deed the real property where their business and her apartment were located. Mildred Tharp had reserved a life estate in the second floor of the premises, in the basement, and in half of a carport.

The articles of agreement providing for the sale, which agreement is attached as an exhibit to various of the pleadings included in the record, was executed on May 1, 1979, by the Hills and Mildred and

Hubert Tharp, since deceased, and specified, *inter alia*, that

"the Grantees [Hills] further covenant and agree to have the building upon the said premises insured against loss of fire and other hazards in the sum of Forty Thousand Dollars ($40,000.00) or to its insurable value with policies to be issued in the names of the Grantors [Tharps] and Grantees with loss made payable to both parties according to the respective interest [*sic*] as they shall appear at the time of the loss.

Should the Grantees fail to pay taxes or provide insurance as required hereunder the Grantors may do so and add the cost thereof with interest as required on the principal to the amount due on the next payment date of interest on the said contract."

Insurance was obtained from Country Mutual Insurance Company (hereafter referred to as Country Mutual) in the names of Carolyn and Dennis Hill d/b/a Hill's Shoe Store and Ready to Wear and was in effect at the time of the fire. Neither of the Tharps was named as an insured. After the fire Country Mutual paid the Hills $117,500, and the Hills paid Mildred Tharp the balance due and owing on the contract at the time of fire.

Following the filing of the complaint by the Reichs and Ruby Hester against the Hills and Mildred Tharp, the Hills counterclaimed against Mildred Tharp seeking, in count I, contribution and, in count II, indemnification. In an amendment to their counterclaim against Mildred Tharp, the Hills added a third count in which they, for the use and benefit of Country Mutual, sought judgment in the amount of $117,500, plus costs of suit, the amount, as we have indicated, that Country Mutual paid the Hills. That amount included damage alleged to have occurred to the building in which the Hills' store was located, the fixtures attached thereto, and the personal property located therein. The Hills alleged that by certain negligent acts and omissions Mildred Tharp had violated the provision of the articles of agreement requiring her to assume responsibility for "all interior repair and decoration as well as maintenance on the premises retained by [the Tharps]."

Mildred Tharp counterclaimed against the Hills seeking judgment for the amount of all costs, damages, sums of money, and attorney's fees that she might be required to pay as a result of the litigation against her, occasioned, she claimed, by the Hills' breach of the covenant in the articles of agreement requiring them to list her as an additional insured under the policy of insurance they had obtained.

Mildred Tharp moved to dismiss the three counts of the Hills' counterclaim against her, of which the trial court dismissed count III.

In a motion to reconsider the Hills asked the court "to reconsider the same to the extent of a claim in that Count in the sum of $67,600.00 in lieu of $117,500.00," which reduced amount represented the amount paid them by Country Mutual for the loss of fixtures and personal property allegedly suffered by them as a result of the fire "and would not be any claim for damages as a result of loss or damage to the building." The trial court denied the Hills' motion to reconsider.

The Hills had also moved to dismiss Mildred Tharp's counterclaim against them. The trial court granted that motion, allowing her to file an amended counterclaim, which she filed, seeking the same relief she had sought in the counterclaim. The Hills moved to dismiss her amended counterclaim and, for the use and benefit of Country Mutual, amended count II of their counterclaim against her, seeking judgment in the amount of $67,000, plus the costs of suit, representing the amount of the damage caused to their personal property by the fire and paid by Country Mutual. They alleged, as they had in count III, that Mildred Tharp had assumed under the articles of agreement responsibility for "all interior repair and decoration as well as maintenance on the premises retained by [the Tharps]" and that "notwithstanding said responsibility" Mildred Tharp had committed certain negligent acts or omissions and had thereby caused the fire. Mildred Tharp moved to dismiss the Hills' amended count II of their counterclaim and sought sanctions, maintaining that the amended count II realleged substantially all of the allegations of count III of the counterclaim, which the trial court had dismissed with prejudice and which dismissal the trial court had considered adversely to the Hills.

Following a hearing the trial court in an order entered January 14, 1986, granted the Hills' motion to dismiss with prejudice Tharp's amended counterclaim because, according to its finding

"it appears from the underlying contract that the purpose for requiring insurance was to pay off the contract and even though Tharp was not named as an additional insured, the contract was paid out of the insurance proceeds and for the reason that the contract provided Tharp could acquire insurance if Hill did not but she failed to do so."

In its order the trial court granted further that part of Tharp's motion seeking dismissal with prejudice of the Hills' amended count II of their counterclaim because, according to its finding, the

"Hills were to provide insurance with Tharp as additional insured and they failed to do so, but had they done so, Hills (and Country Mutual Insurance) could not have sued an additional

insured under a subrogation theory."

The trial court denied that part of Tharp's motion seeking sanctions against the Hills.

Thereafter Ruby Hester, the Reichs, and Mildred Tharp stipulated that by reason of settlement those counts of the complaint against Tharp should be dismissed with prejudice with the parties to bear their respective costs of suit, and the trial court entered an order on February 7, 1986, to that effect. Similarly, the plaintiffs and the Hills entered into a limited settlement agreement, and the trial court entered another order on February 7, 1986, dismissing the Hills from the proceeding with each party to bear his or her own costs. The court in that order also dismissed the count of the Hills' counterclaim against Tharp for contribution, that is, count I, and ordered that its earlier order of January 14, 1986, dismissing the Hills' amended count II of their counterclaim be a final order, finding no just reason to delay the enforcement or appeal thereof. The Hills, for the use and benefit of Country Mutual, appeal the order of February 7, 1986, making final the trial court's order of January 14, 1986, in which it dismissed the amended count II of their counterclaim, and Tharp cross-appeals the trial court's dismissal with prejudice of her amended counterclaim.

We address first the Hills' appeal, presenting the issue "[w]hether the trial court erred in dismissing the count of the Counterclaim (Count II) against Mildred V. Tharp based on negligence for fire losses to personal property of Dennis Hill and Carolyn Hill." The Hills contend that the articles of agreement for the sale of the building required them to acquire insurance on the building for loss resulting from fire and other hazards in the sum of $40,000 or to its insurable value, that Mildred Tharp received all money due her for the sale of the building, and that she, therefore, suffered no loss as a result of their inadvertent failure to add her to the policy as an additional insured on the coverage for the building. They argue that the trial court erroneously concluded that the failure to add Tharp to the Hills' policy as an additional insured would bar their claim against her because, even if she had been added as an additional insured, such addition of her would have been only for coverage on the building, that being all the parties contracted to undertake. They urge that the articles of agreement were silent and offered Tharp no protection as to liability payments for any kind of personal property losses incurred by the Hills as a consequence of her negligence.

The doctrine of subrogation is designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall and to reimburse the innocent party who is

compelled to pay. (*Illinois Housing Development Authority v. M-Z Construction Corp.* (1982), 110 Ill. App. 3d 129, 441 N.E.2d 1179.) Under this doctrine a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another will be subrogated to the rights of the injured person against such a wrongdoer. (110 Ill. App. 3d 129, 441 N.E.2d 1179.) It is axiomatic that for a right of subrogation to exist, the subrogor must possess a right that he could enforce against a third party and that the subrogee must seek to enforce the subrogor's right. (*Continental Casualty Co. v. Polk Brothers, Inc.* (1983), 120 Ill. App. 3d 395, 457 N.E.2d 1271.) The subrogee can have no greater rights than the subrogor and can enforce only such rights as the subrogor could enforce against the third party. (120 Ill. App. 3d 395, 457 N.E.2d 1271.) Thus, it is commonly stated that the subrogee, here Country Mutual, must step into the shoes of or be substituted for the subrogor. No right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty. (16 G. Couch, Insurance sec. 61:136, at 195 (2d ed. 1983).) No right of subrogation arises against a person who holds the status of an additional insured. (16 G. Couch, Insurance sec. 61:137, at 197 (2d ed. 1983).) Where the insured is required by contract or lease to carry insurance for the benefit of another, the other party may attain the status of a coinsured, and no subrogation may be taken against such a party, in the absence of a design or fraud on the part of the coinsured. (16 G. Couch, Insurance sec. 61:137, at 200 (2d ed. 1983).) The doctrine of subrogation originates in the general principles of equity and will be applied or not according to the dictates of equity and good conscience and considerations of public policy. 6A J. Appleman, Insurance Law and Practice sec. 4054, at 142 (1972).

We have been cited to and our own research has disclosed no case presenting the rather unusual fact situation before us. Both the Hills and Tharp rely on the analogy of the landlord-tenant relationship and on cases involving the issue of a lessee's liability for fire damage caused by his own negligence. Although the relationship between the Hills and Tharp was plainly not that of landlord and tenant, we find the landlord-tenant analogy and the cases relevant to it instructive.

In *Cerny-Pickas & Co. v. C. R. Jahn Co.* (1955), 7 Ill. 2d 393, 131 N.E.2d 100, a large industrial building was leased and destroyed by a fire caused by the lessee's negligence. The issue presented was whether the tenant, though negligent, was to be held not liable for damages under the lease, which did not expressly provide for the ten-

ant's nonliability for fires it might negligently cause. The lessor and its insurer, as subrogee under the lessor's insurance policy, brought an action against the lessee to recover damages for the loss of the leased building, machinery, and equipment. After considering various provisions of the lease, including the redelivery clause calling for the lessee, upon termination of the lease, to turn over the premises to the lessor " 'in good condition and repair (loss by fire and ordinary wear excepted)' " (7 Ill. 2d 393, 395, 131 N.E.2d 100, 102), the court declared:

> "In the present lease the lessor agrees in clause 14 to pay for fire insurance upon the leased building, equipment and machinery. The parties contemplated that the risk of loss by fire should be insured against and we see no reason to suppose that they did not contemplate the customary insurance policy which covers both accidental and negligent fires. *** From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire." 7 Ill. 2d 393, 398, 131 N.E.2d 100, 103.

In *Continental Casualty Co. v. Polk Brothers, Inc.*, fire destroyed a leased building, and the insurance companies involved contended that under the lease agreement therein the landlord had a cause of action for damages to the building caused by the lessee's negligence. The court of review disagreed, stating:

> "Our review of the above-cited cases dealing with the issue of lessee liability for fire damage reveals that the key factor in determining whether the parties intended to exculpate lessee negligence is the allocation of insurance burdens as evidenced by the terms of the lease. Where the lease terms either expressly or impliedly indicate that the lessor is to obtain fire insurance, the lessee will normally not be held liable for fire damage caused by its own negligence unless the parties' intent is clearly to the contrary. This construction will give effect to the probable intent of the parties that the lessor is to look to the insurance he has agreed to procure for indemnification from fire loss. To hold otherwise would require both lessor and lessee to obtain fire insurance—lessee for fires caused by his own negligence and lessor for all other fires. As we have previously noted, such a peculiar insurance arrangement is not in accord with normal underwriting practices existent in the insurance industry today where fire insurance policies are routinely written

to cover all fire damage, even if caused by the insured's reckless or negligent conduct." *Continental Casualty Co. v. Polk Brothers, Inc.* (1983), 120 Ill. App. 3d 395, 401-02, 457 N.E.2d 1271, 1276.

In the recent case of *Anderson v. Peters* (1986), 142 Ill. App. 3d 182, 491 N.E.2d 768, the court, when presented with the question whether the tenant in possession of premises by virtue of an oral lease is liable for his negligence to the landlord's insurer for damage to the premises, held that the tenant was not so liable, relying heavily upon the case of *Sutton v. Jondahl* (Okla. App. 1975), 532 P.2d 478. The court in *Sutton* specifically held that the insurer was not entitled to subrogation since the law considers a tenant as a coinsured of the landlord absent an express agreement between them to the contrary. The *Anderson* court adopted a considerable portion of the *Sutton* opinion including this:

" 'The principle of subrogation was begotten of a union between equity and her beloved—the natural justice of placing the burden of bearing a loss where it *ought to be.* Being so sired this child of justice is without the form of a rigid rule of law. On the contrary it is a fluid concept depending upon the particular facts and circumstances of a given case for its applicability. To some facts subrogation will adhere—to others it will not. *Home Owners' Loan Corp. v. Parker,* 181 Okla. 234, 73 P.2d 170 (1937).

Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance.' " (Emphasis in original.) *Anderson v. Peters* (1986), 142 Ill. App. 3d 182, 186, 491 N.E.2d 768, 771.

Citing *Cerny-Pickas* and *Sutton,* among others, the court in *Alaska Insurance Co. v. RCA Alaska Communications, Inc.* (Alaska 1981), 623 P.2d 1216, 1218, observed that,

"[i]n recent years a number of courts have denied a cause of action to landlords and the right of subrogation to their insurers, when the landlord covenants to carry fire insurance on the leased premises, and the fire damage is allegedly due to the negligence of the tenant. Absent an express provision in the lease establishing the tenant's liability for loss from negligently started fires, the trend has been to find that the insurance obtained was for the mutual benefit of both parties, and that the

504

tenant 'stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim.' *Rizzuto v. Morris*, 22 Wash. App. 951, 592 P.2d 688, 690 (1979), *citing Rock Springs Realty, Inc. v. Waid*, 392 S.W.2d 270, 278 (Mo. 1965); *Monterey Corp. v. Hart*, 216 Va. 843, 224 S.E.2d 142, 146 (1976)."

Similarly, the court in *Rizzuto* referred to "the trend of modern case law *** to relieve the lessee from liability for fire damage caused by his own negligence where the circumstances lead the court to conclude the parties intended such a result" (*Rizzuto v. Morris* (1979), 22 Wash. App. 951, 955, 592 P.2d 688, 690). To determine whether the tenant should be considered a coinsured, courts have looked to whether the insurance policy was obtained for the benefit of the tenant as well as the landlord; to determine whether the insurance policy was obtained for the mutual benefit of tenant and landlord, the courts have looked first to the intent of the parties. *Aetna Insurance Co. v. Craftwall of Idaho, Inc.* (9th Cir. 1985), 757 F.2d 1030.

Under the unusual facts and circumstances of the instant case we think that Tharp should be deemed a coinsured of the Hills and that no right of subrogation can therefore arise in favor of Country Mutual against her. Although Tharp was not, in fact, named as an additional insured, the parties intended and agreed that the Tharps were to be so named, and they would have been were it not for a failure on the part of the Hills. Had the Tharps been so added and a premium charged by the insurer for the addition of them as insureds, the amount of such a premium would have been negligible. Had Tharp been named as an insured in accord with the intent of the parties as expressed in the articles of agreement, we believe—although we need not and do not decide—that no right of subrogation would have arisen against her. Although none of the landlord-tenant cases discussed above specifically addresses the issue raised here concerning damage to personal property, we think it highly unlikely that the parties to this agreement intended, in the event of a fire damaging both the building and its contents—hardly an uncommon occurrence—that the Tharps would, on the one hand, receive through the proceeds of insurance the benefit of their bargain in terms of the value of the building but would, on the other hand, be liable to the Hills and, hence, to their insurer for the value of the entire inventory of the Hills' store downstairs, the value of which might be and, indeed, was greater than the value of the building itself and, thus, of their contract. Inasmuch as the doctrine of subrogation originates, as we have said, in the general principles of equity and is applied according to the dic-

tates of equity and good conscience, we conclude and accordingly hold that under the circumstances here presented no right of subrogation arose in favor of Country Mutual against Tharp. The trial court therefore committed no error in granting Tharp's motion to dismiss with prejudice the Hills' amended count II of their counterclaim.

■■ We turn now to Tharp's cross-appeal, presenting the issue "[w]hether the trial court erroneously dismissed the Amended Counterclaim of Mildred Tharp, seeking indemnity from the Hills by reason of their breach of the agreement to procure insurance with her as a named insured." They maintain that because the Tharps were not included as additional insureds on the Hills' single, multiperil policy, the Tharps did not receive the benefit of this bargain under the articles of agreement, which contemplated, they say, "including the Tharps on all the policies of insurance taken out on the building." Tharp contends that she is entitled to assert a claim for indemnity against the Hills seeking reimbursement for any successful subrogation judgment against her for the benefit of Country Mutual and that any losses sustained by her as a result of the Hills' failure to limit the Tharps' liability should be incurred by the Hills. She argues further that the following provision in the articles of agreement concerning attorney fees entitles them to reimbursement from the Hills for their attorney fees associated with this litigation:

> "In the event that it is necessary for the Grantors to employ an attorney to enforce the provisions of this agreement or to give the Grantees any notice hereunder, and should the Grantors prevail in such dispute, the Grantees agree to pay the Grantors such reasonable attorney's fees so incurred and the Grantors may add the cost of such expenses to the sums due hereunder and they shall be paid by the Grantees on the next date for payment of interest and principal as provided herein."

Since we have held that no right of subrogation arose in favor of Country Mutual against Tharp, no judgment against her for the benefit of Country Mutual is possible. With respect to her liability to third persons for damage caused by her alleged negligence associated with the fire, there is no indication in the articles of agreement that the insurance coverage required to be obtained by the Hills was to extend to buildings and other property outside of that agreement and owned by third persons. (See *Agra-By-Products, Inc. v. Agway, Inc.* (N.D. 1984), 347 N.W.2d 142.) We do not construe the provision so broadly. As Tharp points out, it is well settled in Illinois that provisions in contracts for awards of attorney fees are an exception to the general rule that the unsuccessful party is not responsible for payment of such

fees. (*Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 462 N.E.2d 488.) We do not think that the provision pertaining to attorneys fees in the articles of agreement, contemplated as arising out of the need of the grantors to enforce a provision of the agreement or to give notice to the grantees with payment of such fees to be made by the grantees on the next date for payment of interest and principal, is applicable to the situation here. Accordingly, the trial court did not err in dismissing with prejudice Tharp's amended counterclaim.

Affirmed.

KARNS, P.J., concurring.

JUSTICE HARRISON,* dissenting in part:

I believe the majority is correct in analogizing the relationship between the Hills and Mrs. Tharp to that of landlord and tenant. To be sure, Mrs. Tharp was able to continue occupying a portion of the premises by providing for reservation of a life estate in the contract for deed under which the property was sold to the Hills, and not by virtue of an actual lease. Nevertheless, the Hills presumably paid less for the property because of the life estate reserved by Mrs. Tharp than they would have otherwise. To the extent that the purchase price was lower than the actual value of the property because of that reserved life estate, the disparity can be construed as being equivalent to prepaid rent tendered to the Hills by Mrs. Tharp. Similarly, the provisions of the contract for deed governing the terms of the life estate are comparable to a lease agreement between them.

At common law, a tenant is responsible for damage to leased premises resulting from his or her own negligence. (*Anderson v. Peters* (1986), 142 Ill. App. 3d 182,187, 491 N.E.2d 768, 772 (Heiple, J., dissenting).) The parties may, of course, agree that a tenant should not be so liable. An express exculpatory provision in the lease is not required in order to exonerate the lessee for his or her negligently caused fires. (*Continental Casualty Co. v. Polk Brothers, Inc.* (1983), 120 Ill. App. 3d 395, 400, 457 N.E.2d 1271, 1275.) Whether a lessee's negligence is to be exculpated turns, instead, on the intent of the parties, and "the key factor in determining whether the parties intended to exculpate lessee negligence is the allocation of insurance burdens

---

*Justice Harrison replaces Justice Jones, who retired after the cause was taken under advisement.

as evidenced by the terms of the lease." 120 Ill. App. 3d 395, 401, 457 N.E.2d 1271, 1276.

The proper construction to be given a lease is to be determined from the instrument as a whole. (*One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1975), 60 Ill. 2d 312, 314, 326 N.E.2d 400, 402.) The contract for deed here expressly provided that the Hills were obligated only to have the *building* insured and to name the Tharps as coinsureds with them on any policy covering the building. This was sufficient to prevent Country Mutual, the Hills' insuror, from bringing a subrogation claim against Mrs. Tharp to recover the amount it paid out for damage to the building, even though the damage resulted from Mrs. Tharp's negligence. I fail to see, however, how that obligation can be extended to bar a subrogation claim against Mrs. Tharp arising from the damage she caused to the Hills' personal property.

While the life estate provisions in the contract for deed may be comparable to a lease agreement, we must not overlook that the real purpose of the contract was the sale of certain real estate and the building situated thereon. The most logical explanation for the requirement that the Hills obtain insurance on the building was, in my view, simply that the Tharps wanted to make sure that they would still be paid for their property even if the building were damaged or destroyed before title transferred to the Hills. The contract makes no mention of any further obligation by the Hills to obtain insurance against the loss of their or anyone else's personal property, or to name Mrs. Tharp as a coinsured on any policies other than those covering the building. With respect to personal property, I believe that the contract, at most, contemplated that the parties would each secure their own separate insurance, and this is what they in fact did. While Mrs. Tharp unfortunately failed to secure enough insurance to cover the loss to the Hills' personal property which she caused, that was her responsibility. I know of no rule of law or equity by which we can reform or modify the contract after the fact to relieve Mrs. Tharp of what proved to be her own mistake.

Because I therefore do not believe that Mrs. Tharp was intended or can be considered to be a coinsured under the Hill's insurance policy with respect to the Hills' personal property, I must conclude that she is subject to an action for damages by the Hills for the benefit of their insuror with respect to the $67,000 which the Hills' insuror had to pay for the loss of the Hills' personal property caused by Mrs. Tharp's negligence. I would therefore reverse the trial court's dismissal of amended count II of the Hills' counterclaim.

In all other respects I concur in the result reached by the majority. Tharp's amended counterclaim was correctly dismissed. Tharp is not subject to a judgment against her for the benefit of the Hills' insuror with respect to damage to the building, given that the Hills should have named her as a coinsured on their policy covering loss to that building; I do not believe that she can claim damages from the Hills arising from their failure to name her as a coinsured with respect to their insurance covering loss to their personal property, in view of my previous conclusion that the Hills were not obligated under the contract to provide such insurance or to so name her; for the reasons set forth in the majority's opinion, the Hills were likewise not required to provide coverage for the losses "to buildings and other property outside [the] agreement and owned by third persons"; and as the majority correctly notes, this is not a situation to which the provision in the contract pertaining to attorneys fees applies.

In sum, while I concur in the dismissal of Tharp's amended counterclaim, I would reverse the dismissal of amended count II of the Hills' counterclaim and remand for further proceedings.