**LaSALLE NATIONAL BANK,
et al., Plaintiffs,**

v.

**MASSACHUSETTS BAY INSURANCE
COMPANY, et al., Defendants.**

No. 90 C 2005.

United States District Court,
N.D. Illinois,
Eastern Division.

March 12, 1997.

Gary S. Tucker, Law Offices of Gary S. Tucker, Chicago, IL, for LaSalle Nat. Bank, Stanley Berg, Ingrid Berg and LaSalle Northbrook Bank.

Frederick H. Crystal, Richard Dennis Heytow, Jeffrey L. Warnick, Crystal, Heytow and Warnick, Chicago, IL, Nancy Lynn Martin, Circuit Court of Cook County, Criminal Division, Chicago, IL, for Massachusetts Bay Ins. Co., Hanover Ins. Co., State Mut. Life Assur. Co. of America and SMA Financial Corp.

## *MEMORANDUM OPINION AND ORDER*

ANN CLAIRE WILLIAMS, District Judge.

In a motion for partial summary judgment filed seven years after this case commenced and four days after the trial was to begin, plaintiffs argue that defendants cannot maintain their counterclaims against Plaintiff Stanley Berg. The motion raises an interesting and important issue that plaintiffs should have raised months or years ago. For reasons set forth below, the court denies plaintiffs' motion for partial summary judgment.

### *Background*

Until November 16, 1988, Plaintiffs Stanley and Ingrid Berg ("the Bergs") lived in a house at 117 Shore Acres Drive in Lake Bluff, Illinois. Plaintiff LaSalle National Bank held legal title to the Bergs' house. Defendants Massachusetts Bay Insurance Company, Hanover Insurance Company, State Mutual Life Assurance Company of America, and SMA Financial Corporation ("insurance companies") issued a homeowners insurance policy to the Bergs on June

17, 1988. (Pls.' 12(M) ¶¶ 1–5, 8–14; Defs.' 12(N) ¶¶ 1–5, 8–14.)[1] This policy expressly excluded losses caused by intentional acts of an insured. (Pls.' 12(M), Ex. 2, insurance policy, § I Exclusions, ¶ 1(h).)

On November 16, 1988, fire destroyed the Bergs' house. Since the time of the fire, defendant insurance companies have refused to pay Plaintiff Stanley Berg for damages incurred as a result of the fire, claiming that he intentionally caused the fire to be set and knowingly misrepresented his losses. However, defendant insurance companies made various payments to Ingrid Berg, after concluding that she did not cause the fire or misrepresent her losses. In addition, defendant insurance companies have made payments to two mortgagees of the property. (Pls.' 12(M), Ex. 4, defendants' answer, affirmative defenses and counterclaim.).

In their counterclaim, defendant insurance companies seek judgment against Stanley Berg in the amount of the monies they have paid (or will pay) to Ingrid Berg and to the two mortgagees under the terms of the homeowners insurance policy. Defendant insurance companies bring their counterclaim against Stanley Berg "as subrogee of Ingrid Berg." (Pls.' 12(M), Ex. 4, defendants' answer, affirmative defenses and counterclaim.)[2]

### Analysis

Plaintiffs move for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The court will render summary judgment only if the factual record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 (7th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). The court will not render summary judgment if "a reasonable jury could return a verdict for the nonmoving party." *Sullivan v. Cox*, 78 F.3d 322, 325 (7th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Bratton*, 77 F.3d at 171 (citation omitted); *Sullivan*, 78 F.3d at 325 (citation omitted).

On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Then the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 234 (7th Cir.1995) (citations omitted), *cert. denied*, —— U.S. ——, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995).

These burdens are reflected in Rule 12 of the Local General Rules for the Northern District of Illinois. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir. 1994). Under Rule 12(M)(3), the moving party must submit a statement of material facts in the form of short numbered paragraphs supported by specific references to the factual record. Under Rule 12(N)(3), the nonmoving party must submit a response to each such paragraph, including (in the case of disagreement) specific references to the

1. Throughout this Memorandum Opinion and Order, the term "Pls.' 12(M)" refers to plaintiffs' statement of material facts submitted under Rule 12(M)(3) of the Local Rules of the United States District Court for the Northern District of Illinois ("Local Rules"). The term "Defs.' 12(N)" refers to defendants' response submitted under Rule 12(N)(3) of the Local Rules. The term "Defs.' 12(N) Supp." refers to defendants' statement of additional material facts submitted under Rule 12(N)(3) of the Local Rules.

2. Although defendants assert that Count I of their counterclaim is not based on subrogation, (Defs.' 12(N) Supp. ¶ 1), this assertion is plainly without merit. By the express terms of the counterclaim, defendant insurance companies bring all counts of the the counterclaim against Stanley Berg "as subrogee of Ingrid Berg." (Pls.' 12(M), Ex. 4, defendants' counterclaim.) In any event, absent subrogation, the court doubts that defendants have standing to bring a counterclaim against Plaintiff Stanley Berg.

factual record.[3]

■ In their motion for summary judgment, plaintiffs argue that defendants cannot maintain their counterclaim because "[i]t is a well settled principle of Illinois law that an insurer possesses no subrogation rights against its own insured." (Pl.'s Mem. in Supp. at 5.)[4] In support of this argument, plaintiffs cite two Illinois cases: *Reich v. Tharp*, 167 Ill.App.3d 496, 118 Ill.Dec. 248, 521 N.E.2d 530 (1987), and *Dix Mutual Ins. Co. v. LaFramboise*, 149 Ill.2d 314, 173 Ill. Dec. 648, 597 N.E.2d 622 (1992).

In *Reich v. Tharp*, an Illinois appellate court laid out the general principles of subrogation as follows:

The doctrine of subrogation is designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall and to reimburse the innocent party who is compelled to pay. Under this doctrine a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another will be subrogated to the rights of the injured person against such a wrongdoer. It is axiomatic that for a right of subrogation to exist, the subrogor must possess a right that he could enforce against a third party and that the subrogee must seek to enforce the subrogor's right. The subrogee can have no greater rights than the subrogor and can enforce only such rights as the subrogor could enforce against the third party. Thus, it is commonly stated that the subrogee ... must step into the shoes of or be substituted for the subrogor. No right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty. No right of subrogation arises against a per-

son who holds the status of an additional insured. Where the insured is required by contract or lease to carry insurance for the benefit of another, the other party may attain the status of a coinsured, and no subrogation may be taken against such a party, in the absence of a design or fraud on the part of the coinsured. The doctrine of subrogation originates in the general principles of equity and will be applied or not according to the dictates of equity and good conscience and considerations of public policy.

*Reich*, 118 Ill.Dec. at 251–52, 521 N.E.2d at 533–34 (citations omitted).[5]

In *Dix Mutual Ins. Co. v. LaFramboise*, an insurer alleged that a tenant of an insured homeowner negligently caused a fire that damaged the home. After paying the homeowner more than $40,000, the insurer sought to recover that amount from the tenant by way of subrogation. The Supreme Court of Illinois held that the insurer could not maintain a subrogation action against the allegedly negligent tenant because the tenant was in effect a coinsured under the insurance policy. *Dix*, 173 Ill.Dec. at 652, 597 N.E.2d at 626. In support of this holding, the Supreme Court cited *Reich* for the proposition that "an insurer may not subrogate against its own insured or any person or entity who has the status of a co-insured under the insurance policy." *Dix*, 173 Ill.Dec. at 652, 597 N.E.2d at 626 (citing *Reich*, 118 Ill.Dec. at 251–52, 521 N.E.2d at 533–34). However, the Supreme Court cautioned that:

The right of subrogation is an equitable right and remedy which rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall. Subrogation is allowed to prevent injustice and

---

**3.** Rule 12(N)(3) further instructs the nonmoving party to submit a statement of any additional facts requiring denial of summary judgment, in the form of short numbered paragraphs supported by specific references to the factual record. In turn, Rule 12(M)(3) instructs the moving party to submit a concise reply to any such additional facts, including (in the case of disagreement) specific references to the factual record.

**4.** The court cannot help wondering why, if this principle is so well settled, plaintiffs failed to bring their motion for partial summary judgment months or years ago.

**5.** The "unusual facts and circumstances" of *Reich, id.* at 253, 521 N.E.2d at 535, are less important for present purposes than the general discussion of subrogation quoted above.

unjust enrichment but will not be allowed where it would be inequitable to do so. There is no general rule which can be laid down to determine whether a right of subrogation exists since this right depends upon the equities of each particular case.

*Dix,* 173 Ill.Dec. at 650, 597 N.E.2d at 624 (citations omitted).

Both *Reich* and *Dix* involved negligence, not arson. Illinois courts apparently have never considered whether an insurer can subrogate against an insured arsonist, but courts in other states have considered the issue and answered in the affirmative. In *Madsen v. Threshermen's Mutual Ins. Co.,* 149 Wis.2d 594, 439 N.W.2d 607 (App.1989)— a case remarkably similar to the instant case—the owners of a restaurant purchased a fire insurance policy that that expressly excluded intentional acts caused by an insured. After fire destroyed the restaurant, the insurer paid approximately $33,000 to a mortgagee but refused to pay anything to the restaurant owners. The owners sued the insurer for breach of contract. The insurer counterclaimed for the $33,000 it had paid to the mortgagee, claiming that one of the owners intentionally set fire to the restaurant. Affirming a verdict in favor of the insurer, the Wisconsin Court of Appeals stated:

> Ordinarily, an insurer does not have a right of subrogation or indemnification against its own insured. In this instance, however, adhering to this principle would defeat a purpose of subrogation, which is to ultimately place the loss on the wrongdoer. Here, the wrongdoer and the insured are the same person, [one of the restaurant owners]. Thus, requiring [the restaurant owner] to reimburse [the insurer] would appropriately place the loss on the wrongdoer.

*Id.,* 439 N.W.2d at 610.[6] Although the court has located only a few cases that consider subrogation in the context of arson, they all agree with the holding of *Madsen* that an insurer may subrogate against an insured arsonist. *See, e.g., Ambassador Ins. Co. v. Montes,* 76 N.J. 477, 388 A.2d 603, 606–08 (1978).[7]

Although the holding of *Madsen* is superficially inconsistent with statements in *Reich* and *Dix* that "an insurer may not subrogate against its own insured," *Dix,* 173 Ill.Dec. at 652, 597 N.E.2d at 626 (citing *Reich,* 118 Ill.Dec. at 251–52, 521 N.E.2d at 533–34), the holding of *Madsen* is consistent with the underlying principles enunciated in *Reich* and *Dix.* In *Dix,* the Illinois Supreme Court stressed that subrogation "is allowed to prevent injustice and unjust enrichment" and "rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall." *Dix,* 173 Ill.Dec. at 650, 597 N.E.2d at 624 (citations omitted). A person who intentionally sets fire to his own property in an effort to defraud his insurance company should be held responsible for his actions. An insurance company that dutifully honors the claims of innocent third parties should be allowed to seek reimbursement from the insured arsonist; any other rule would discourage insurance companies from honoring rightful claims by innocent third parties. *See Ambassador,* 388 A.2d at 606–07 (to encourage insurers to pay innocent third parties, "it is equitable and just that the insurer be indemnified by the insured"). Because letting an insurer subrogate against an insured arsonist "plac[es] ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall," *Dix,* 173 Ill.Dec. at 650, 597 N.E.2d at 624 (citations

**6.** This court agrees with the Wisconsin appellate court that letting an insurer subrogate against an insured arsonist "appropriately place[s] the loss on the wrongdoer." For reasons explained below, however, this principle makes sense only for an intentional wrongdoer (such as an arsonist), not for a negligent wrongdoer (such as a careless smoker).

**7.** The other two opinions that consider subrogation against an insured arsonist are unpublished,

and as such they have no precedential value. For the record, however, they support the basic holding of *Madsen. See West Bend Mutual Ins. Co. v. Delong,* No. 89–0732, 1989 WL 165508, at *2 (Wis.App.Ct. Nov. 21, 1989) (unpublished disposition), *review denied,* 451 N.W.2d 298 (Wis. 1990); *Webb v. Tennessee Farmers Mutual Ins. Co.,* App. No. 86–32–II, 1986 WL 6846, at *4 (Tenn.App.Ct. Middle Section June 18, 1986) (unpublished disposition).

omitted), this court is confident that the Illinois courts would adopt such a rule under the circumstances presented by this case.

◼ Basic principles of insurance law support the conclusion that an insurer may subrogate against an insured arsonist—at least where the insurance policy in question excludes losses caused by the intentional acts of an insured. To understand why, it is necessary to recall the underpinnings of the general rule that an insurer may not subrogate against its own insured ("the anti-subrogation rule"). The anti-subrogation rule "is intended to prevent an insurer from recovering back from its insured that loss or damage the risk of which the insured had passed along to the insurer under the policy." 2 Allan D. Windt, Insurance Claims and Disputes § 10.07 at 141 (3rd ed.1995); *see North Star Reinsurance Corp. v. Continental Ins. Co.*, 82 N.Y.2d 281, 604 N.Y.S.2d 510, 516, 624 N.E.2d 647, 653 (1993) (anti-subrogation rule prevents insurer from passing incidence of loss to its own insured in the context of a claim "arising from the very risk for which the insured was covered"). Therefore, where a risk is covered by an insurance policy, an insurer may not subrogate against its own insured.

◼ By the same token, where a risk is *not* covered by an insurance policy, an insurer *may* subrogate against its own insured: "Subrogation should be allowed against an insured when the insured is not entitled to coverage under its policy by reason of the injury or damage caused by the insured." 2 Windt, Insurance Claims § 10.07 at 141; *see North Star*, 604 N.Y.S.2d at 517, 624 N.E.2d at 654 (insurer *could* subrogate against insured because exclusions rendered policy inapplicable to loss at issue); *Rosato v. Karl Koch Erecting Co.*, 865 F.Supp. 104, 109–10 (E.D.N.Y.1994) (same); *Zahno v. Urquart*, 213 A.D.2d 1004, 625 N.Y.S.2d 111, 112–13 (1995) (same); *McGurran v. DiCanio Planned Dev. Corp.*, 216 A.D.2d 538, 628 N.Y.S.2d 773, 774–75 (1995) (same).

In the case now before the court, the insurance policy that defendants issued to plaintiffs contained an "intentional loss" exclusion, indicating that the insurer would not cover losses caused by an intentional act of an insured. If a jury were to find that Plaintiff Stanley Berg intentionally set fire to his house or intentionally caused someone else to set fire to his house, then the "intentional loss" exclusion would apply, with two major consequences. First, defendant insurance companies would not liable for losses incurred by Plaintiff Stanley Berg. Second, by way of subrogation, Plaintiff Stanley Berg would be liable to defendant insurance companies for amounts they have paid (or will pay) to Plaintiff Ingrid Berg and two mortgagees under the homeowners insurance policy.

[4] Of course, the result would be entirely different if a jury were to find that Plaintiff Stanley Berg *negligently* started the fire that destroyed his home. In that case, the "intentional loss" exclusion would not apply, and defendant insurers would be liable to Plaintiff Stanley Berg for the losses he incurred as a result of the fire. More importantly, defendant insurers could not maintain a subrogation counterclaim against Plaintiff Stanley Berg because such a counterclaim would defeat the very purpose of the insurance policy. To put it another way, allowing a subrogation counterclaim against a *negligent* insured would impermissibly let the insurer "recover[ ] back from its insured that loss or damage the risk of which the insured had passed along to the insurer under the policy." 2 Windt, Insurance Claims and Disputes § 10.07 at 141.[8] The anti-subrogation rule clearly prohibits such a counterclaim against an insured or a co-insured, as the Illinois courts held in *Reich* and *Dix*.

As noted above, *Reich* and *Dix* involved negligence rather than arson, and the Illinois court have never reached the question whether an insurer may subrogate against an insured who *intentionally* sets fire to his own

---

**8.** In theory, an insurer could maintain a subrogation action against a negligent insured if the insurance policy in question excluded losses caused by negligent (as well as intentional) acts of the insured. In practice, however, such a policy would afford such limited coverage that no rational property-owner would purchase it. The court is not aware of any cases raising this issue, probably because few if any such policies exist.

property. Finding no Illinois cases directly on point, this court has examined the general principles enunciated in *Reich* and *Dix,* cases decided by other jurisdictions, and the general principles of insurance law. All of these sources lead the court to conclude that defendant insurance companies are entitled to maintain their subrogation counterclaim against Plaintiff Stanley Berg. The court believes that the Illinois courts would reach the same conclusion were they to consider the issue as it arises in this case.

### Conclusion

For reasons set forth above, the court denies plaintiffs' motion for partial summary judgment on defendants' counterclaim. In addition, the court instructs the parties to submit all proposed jury instructions on or before March 24, 1997.