DIANE HALVERSON, Plaintiff-Appellant, v. AMIE STAMM, Defendant-Appellee.—DIANE HALVERSON, Plaintiff-Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

Fifth District   Nos. 5—01—0077, 5—01—0196 cons.

No. 5—01—0077; No. 5—01—0196.

Opinion filed May 15, 2002.

Stephen W. Stone, of Howerton, Dorris, Stone & Phelps, of Marion, for appellant.

Brad K. Bleyer, of Marion, for appellees.

JUSTICE WELCH delivered the opinion of the court:

We have before us the consolidated appeal of case Nos. 5—01—0077 and 5—01—0196. Diane Halverson (plaintiff) is the plaintiff-appellant in each case. Her daughter, Amie Stamm, is the defendant-appellee in case No. 5—01—0077, and Allstate Insurance Company (Allstate) is the defendant-appellee in case No. 5—01—0196. Both cases arise from an automobile accident involving plaintiff and Stamm wherein plaintiff was injured in the accident. In case No. 5—01—0077, plaintiff sued Stamm in the circuit court of Jackson County, alleging negligence. In case No. 5—01—0196, plaintiff sued Allstate in

the circuit court of Saline County, seeking to recover medical expenses allegedly covered under an insurance policy purchased from Allstate. The facts giving rise to both cases are as follow.

On September 8, 1997, plaintiff, Stamm, and Stamm's son were nearing the end of a 10-hour drive from Oklahoma to Illinois when Stamm, who was driving the car, ran a stop sign and collided with a truck. It was nearly 5 o'clock in the morning when the accident occurred. Stamm was driving plaintiff's automobile, while plaintiff was asleep in the passenger seat and Stamm's son was asleep in the backseat. Plaintiff was injured in the accident and taken to a hospital, where doctors discovered that a bone in her foot had been shattered. A cast was placed on her foot and she was eventually sent home on crutches. Ten days after the accident, plaintiff was visiting friends when one of her crutches slipped out from under her and she sustained injuries to her shoulder.

In effect at the time of the accident was an automobile insurance policy that plaintiff had purchased from Allstate. The policy provided plaintiff with several areas of insurance coverage, including automobile liability insurance (covering bodily injury and property damage), uninsured-motorists insurance, auto collision insurance, auto comprehensive insurance, and "Automobile Medical Payments" insurance. Separate premiums were paid for each of these areas of coverage.

According to the terms of the "Automobile Medical Payments" (Medpay) area of coverage, Allstate agreed to "pay to or on behalf of an insured person all reasonable expenses actually incurred for necessary medical treatment, medical services[,] or medical products" when "bodily injury is caused by an accident involving an auto." The description of the Medpay coverage further provided: "[Medpay] benefits, other than funeral service expenses benefits, will be reduced by *** amounts received from *others*, including their insurers, who may be legally responsible for the injuries. This reduction applies only to amounts that are a duplication of payment for the same loss." (Emphasis added.) Finally, the description of the Medpay coverage contained a subrogation clause providing: "When we pay, an insured person's rights of recovery from anyone else become ours up to the amount we have paid. The insured person must protect these rights and help us enforce them."

On December 31, 1998, plaintiff sued Stamm in the circuit court of Jackson County (case No. 5—01—0077). Plaintiff alleged that Stamm was negligent, and plaintiff sought damages for injuries sustained to her foot and shoulder. Allstate acknowledged that Stamm was an insured person under the provisions of the automobile liability

insurance coverage purchased by plaintiff from Allstate. Allstate provided Stamm with an attorney.

On August 9, 2000, the attorney provided by Allstate and representing Stamm filed an amended affirmative defense denying any negligence of Stamm. Stamm's attorney claimed that plaintiff was more negligent than defendant or that plaintiff's negligence was the proximate cause of plaintiff's injuries because plaintiff allowed Stamm "to drive the plaintiff's car when she knew or should have known that [Stamm] had been driving for several hours late at night on an unfamiliar roadway" and because plaintiff "failed to assist [Stamm] in watching for road signs and navigation when she knew that [Stamm] was driving late at night on an unfamiliar roadway." The affirmative defense also sought a setoff of $5,429.61 against any judgment for plaintiff. The arguments in support of the affirmative defense claimed that plaintiff had already been paid $5,429.61 on behalf of Stamm for medical bills incurred as a result of the accident.

The trial began on August 9, 2000. At the trial, Stamm testified that she ran a stop sign during the early morning hours of September 8, 1997, and collided with a truck. Stamm testified that when this occurred, plaintiff was asleep. Stamm stated that the accident was not plaintiff's fault and that Stamm was entirely responsible for the accident. Stamm further testified that the attorney representing her was not speaking for her when during opening statement he said that the accident was not her fault. After Stamm testified, plaintiff moved for a directed verdict on the issue of liability. The circuit court granted plaintiff's motion for a directed verdict, and the trial continued on the issue of damages.

After hearing evidence of damages, the jury returned a verdict awarding plaintiff $51,500 in damages. The jury award consisted of $30,000 for "[t]he reasonable expense of necessary medical care, treatment, and services received and the present cash value of the reasonable expenses of medical care, treatment[,] and services reasonably certain to be received in the future," $5,000 for disability, $1,500 for disfigurement, and $15,000 for pain and suffering.

On August 25, 2000, Stamm's attorney filed a "motion for a setoff" against any judgment, in the amount of $5,429.61, "represent[ing] payments made by Allstate Insurance Company on behalf of [Stamm] for medical bills incurred by the plaintiff." Plaintiff filed a response claiming that defendant was not entitled to a setoff because none of the $5,429.61 paid by Allstate was paid on behalf of Stamm. Plaintiff claimed that the $5,429.61 was paid pursuant to plaintiff's Medpay coverage in the insurance policy plaintiff purchased from Allstate. Plaintiff suggested that the court enter a judgment without a

setoff and then "there would likely be a contractual obligation by [plaintiff] to reimburse Allstate for money received by way of judgment." However, plaintiff argued, because the $5,429.61 was not paid on behalf of Stamm but was paid pursuant to plaintiff's own Medpay policy, a setoff would be inappropriate.

On September 22, 2000, while Stamm's motion for a setoff was pending in the circuit court of Jackson County, plaintiff filed a complaint against Allstate in the circuit court of Saline County (case No. 5—01—0196). Plaintiff sought reimbursement for medical expenses in the amount of $24,948.01 (less the $5,429.61 that had already been paid) for injuries that occurred in the automobile accident involving Stamm. Plaintiff was seeking these expenses pursuant to her Medpay coverage of the policy. Plaintiff also claimed that Allstate's refusal to pay her medical expenses under the policy was vexatious and unreasonable.

On October 19, 2000, the circuit court of Jackson County (case No. 5—01—0077) granted Stamm's motion for a setoff and entered a judgment on the jury's verdict less a setoff of $5,429.61 for "payments made to plaintiff." Plaintiff filed a posttrial motion arguing that the setoff was inappropriate. That motion was denied. The sole issue plaintiff raises on appeal in this case is whether the circuit court of Jackson County erred in granting Stamm's motion for a setoff.

On December 13, 2000, in the circuit court of Saline County (case No. 5—01—0196), Allstate filed a motion to dismiss plaintiff's complaint pursuant to subsections (a)(3), (a)(4), and (a)(9) of section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619(a)(3), (a)(4), (a)(9) (West 2000)), claiming that the issue raised by plaintiff as to "the extent of medical bills incurred as a proximate result of the automobile accident of September 8, 1997," had been litigated in the Jackson County lawsuit. Allstate claimed that plaintiff was attempting to circumvent the Jackson County court and relitigate the same issue before the Saline County court.

On March 21, 2001, the circuit court of Saline County granted Allstate's motion to dismiss. Plaintiff now appeals this decision. Plaintiff's appeals of the Jackson County case and the Saline County case have been consolidated in this court. We turn first to plaintiff's appeal of the circuit court of Jackson County's decision to grant Stamm's motion for a setoff.

On appeal, plaintiff claims that the circuit court of Jackson County erred in granting Stamm's motion for a setoff, because the $5,429.61 received by plaintiff was from a "collateral source" and therefore was not subject to a setoff. Plaintiff argues that the $5,429.61 came directly from Allstate under the Medpay portion of the policy and that,

therefore, because the payment made by Allstate to plaintiff was not made by or on behalf of Stamm, Stamm was not entitled to the setoff. Although plaintiff acknowledges that not allowing a setoff amounts to a double recovery for her injuries, plaintiff contends that she is entitled to the double recovery because she paid for the benefit of the Medpay coverage. Plaintiff argues that the description of the Medpay coverage contains no language regarding reimbursement or a setoff. Furthermore, plaintiff contends that although the policy does contain a subrogation clause, because Stamm is an insured under the policy, the clause cannot be enforced.

In response,[1] Allstate turns to the language of the Medpay coverage that states as follows: "Medical Payments benefits will be reduced by *** amounts received from others *** who may be legally responsible for the injuries. This reduction applies only to amounts that are a duplication of payment for the same loss." Allstate argues that this language alone justifies the circuit court's decision to grant a setoff. In addition, Allstate points to a subrogation clause in the Medpay coverage that provides, "[A]n insured person's rights of recovery from anyone else become [Allstate's] up to the amount [Allstate] *** paid." Although Allstate acknowledges that an insurance company generally may not subrogate against its own insured, Allstate argues that we should not apply this general rule because plaintiff would be receiving a double recovery if subrogation is not allowed. In conclusion, Allstate suggests that we affirm the decision of the circuit court of Jackson County by construing the language of the insurance policy by its plain and ordinary meaning and prevent plaintiff from receiving a double recovery.

There is essentially no dispute as to the facts relevant to this appeal. Plaintiff agrees that medical expenses of $5,429.61 paid by Allstate are included in the $30,000 jury award, and Allstate essentially concedes that the $5,429.61 was paid under the Medpay portion of the policy, even though Allstate argued at times that this money was paid "on behalf of Stamm." In addition, there is no dispute as to the language of the insurance policy or that the policy was in effect at the time of the accident. Accordingly, because there is no factual dispute in this case, the issue before us is one of law, and our review of the circuit court's decision is conducted *de novo*. See *Bank of Chicago-*

---

[1] We point out that the same attorney represents both Stamm and Allstate on appeal. Only one brief was filed on behalf of the defendants, and there is no effort in the brief to distinguish between Stamm's claims and Allstate's claims. Therefore, we shall refer to Stamm and Allstate collectively as Allstate.

*Garfield Ridge v. Park National Bank*, 237 Ill. App. 3d 1085, 1090 (1992).

■ We begin our resolution of this appeal by addressing the issue of subrogation. As our supreme court pointed out in *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 319 (1992): "The doctrine of subrogation is a creature of chancery. It is a method whereby one who has involuntarily paid a debt or claim of another succeeds to the rights of the other with respect to the claim or debt so paid." Our supreme court noted that the doctrine of subrogation rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall. *Dix Mutual Insurance Co.*, 149 Ill. 2d at 319.

■ This court has noted, "Under [the] doctrine [of subrogation,] a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another will be subrogated to the rights of the injured person against such a wrongdoer." *Reich v. Tharp*, 167 Ill. App. 3d 496, 501 (1987). However, we have pointed out that for such a right to exist, the subrogor must possess a right that he could enforce against a third party. *Reich*, 167 Ill. App. 3d at 501. Accordingly, no right of subrogation can arise in favor of an insurer against its own insured because, by definition, subrogation arises only with respect to rights of the insured against third persons to whom the insurer has no duty. *Reich*, 167 Ill. App. 3d at 501.

In *Dix Mutual Insurance Co.*, a tenant, with the landlord's approval, attempted to remove some paint from the house he was leasing. A fire resulted and the house was damaged. *Dix Mutual Insurance Co.*, 149 Ill. 2d at 318. The landlord's insurance company paid the landlord for the damage but then brought a subrogation action against the tenant. The lease between the landlord and the tenant did not contain any specific language regarding fire insurance. However, in interpreting the lease as a whole, our supreme court concluded that the lease did not reflect any intent that, during the course of the term of the lease, the tenant would be responsible for any fire damage to the realty. *Dix Mutual Insurance Co.*, 149 Ill. 2d at 321. The court then concluded that the tenant, by his payment of rent, had contributed to the payment of the insurance premium, thereby gaining the status of a coinsured under the insurance policy, and that therefore the insurance company could not maintain a subrogation action against the tenant, as a coinsured, based upon the facts of the case. *Dix Mutual Insurance Co.*, 149 Ill. 2d at 323.

■ We believe that this principle expounded in *Dix Mutual Insurance Co.* applies to the case at bar. Like the tenant in *Dix Mutual In-*

*surance Co.*, Stamm is an insured under plaintiff's insurance policy. This is not disputed by Allstate, because Allstate has provided Stamm with legal representation at the trial and on appeal and has apparently agreed to pay the damages awarded against Stamm. However, because Stamm is an insured under the same policy, Allstate cannot maintain an action in subrogation against Stamm. When the circuit court granted a setoff against the judgment, it essentially allowed Allstate to subrogate against its own insured. This was held to be an inappropriate action in *Dix Mutual Insurance Co.*, and we believe that it is an inappropriate action in the instant case. It is clear under *Dix Mutual Insurance Co.* that no right of subrogation can arise in favor of an insurer against its own insured because, by definition, subrogation arises only with respect to rights of the insured against third persons to whom the insured owes no duty. *Dix Mutual Insurance Co.*, 149 Ill. 2d at 323; *Reich*, 167 Ill. App. 3d at 501. Accordingly, because we believe that no right to subrogation exists in the instant case and that allowing a setoff is essentially allowing Allstate to subrogate against its own insured, we believe that the circuit court's decision to grant a setoff was in error.

Before continuing, however, we must take up Allstate's argument that if a setoff is not allowed, then a double recovery in violation of Illinois public policy results to the benefit of plaintiff. There is no dispute that the $5,429.61 paid by Allstate to plaintiff for medical expenses is also included in the jury award to plaintiff against Stamm. Accordingly, there is no dispute that if a setoff is not allowed, plaintiff will receive a double recovery. However, although Illinois generally disfavors a double recovery, a double recovery is appropriate in some situations. See *Muranyi v. Turn Verein Frisch-Auf*, 308 Ill. App. 3d 213, 215 (1999). Under the facts of the instant case, we believe that this is a situation where a double recovery is appropriate. This is so because plaintiff bargained for such a double recovery when she purchased her insurance policy from Allstate. We now turn to the language of the insurance policy supporting this bargain.

■■ As we noted earlier, the language of the Medpay coverage provides that medical expenses will be reduced by "amounts received from *others* \*\*\* who may be legally responsible for the injuries." (Emphasis added.) When construing the language of an insurance policy, a court must give effect to the intention of the parties as expressed in their agreement. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441 (1998). The court must read the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the

contracts. *Villicana*, 181 Ill. 2d at 442. Words in an insurance policy are to be given their plain and ordinary meaning. *Roberts v. Country Mutual Insurance Co.*, 231 Ill. App. 3d 713, 716 (1992). According to Webster's Third New International Dictionary 1598 (1993), the word "others" is defined as "the ones distinct from the one or those first mentioned or understood." Therefore, when the words in this provision are construed according to their plain and ordinary meaning, it is clear that the parties intended that this provision does not apply to a reimbursement from Stamm. Stamm is clearly not an "other" in this case but is an insured under the policy. This is because "others" must be construed as "the ones distinct from the one or those first mentioned or understood," and those first mentioned or understood are those insured under the policy. Accordingly, "others" must apply only to those who are not insured under the policy. Therefore, because Stamm cannot be considered to fall under the category of "others" under the policy, the "reduction" provision is not applicable. By the terms of Allstate's own insurance contract, it is clear that plaintiff bargained for a double recovery in the factual circumstances of the case before us, and we do not believe that allowing plaintiff a double recovery, a recovery for which she bargained when she purchased insurance from defendant, is against Illinois public policy.

For the foregoing reasons, we believe that the circuit court erred in granting the motion for a setoff. We find it unnecessary to remand this matter to the circuit court, and under the powers given to us by Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we reverse the circuit court's decision with regard to the setoff.

We now turn to case No. 5—01—0196, in which plaintiff appeals the circuit court of Saline County's decision to grant Allstate's motion to dismiss plaintiff's complaint. In this case, plaintiff sued Allstate, seeking reimbursement for medical expenses in the amount of $24,948.01. Plaintiff also claimed that Allstate's refusal to pay these expenses has been vexatious and unreasonable. The circuit court of Saline County dismissed plaintiff's complaint pursuant to section 2—619(a)(3) ("there is another action pending between the same parties for the same cause") and section 2—619(a)(4) ("the cause of action is barred by a prior judgment") of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(3), (a)(4) (West 2000)). The circuit court provided no specific reasons for its dismissal. We believe that the circuit court's decision was in error.

■■ ■ Section 2—619(a)(4) of the Code permits a court to dismiss an action on the ground that it is " 'barred by a prior judgment.' " *Marvel of Illinois, Inc. v. Marvel Contaminant Control Industries, Inc.*,

318 Ill. App. 3d 856, 863 (2001), quoting 735 ILCS 5/2—619(a)(4) (West 1998). This section incorporates the doctrine of *res judicata*, which has three essential elements: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of causes of action, and (3) an identity of parties or their privies. *Marvel of Illinois, Inc.*, 318 Ill. App. 3d at 863. Our review of a circuit court's decision to dismiss a complaint pursuant to section 2—619(a)(4) is *de novo*. *American National Bank & Trust Co. of Chicago v. Village of Libertyville*, 269 Ill. App. 3d 400, 403 (1995). Because the second element is missing from this case and the case adjudicated in Jackson County, we believe that the circuit court erred in dismissing plaintiff's complaint under section 2—619(a)(4).

■ Although the cause of action in each case arose from the same motor vehicle accident, the defendant in each case and the theory of liability in each case are distinct. In the Jackson County case, plaintiff sued Stamm for negligence. In the Saline County case, plaintiff sued Allstate for breach of contract. Our holding above makes it clear that plaintiff is entitled to recover medical expenses from both parties even though it will result in a double recovery. As is clear from the complaints filed, the theories of recovery are premised on different theories and evidence. The evidence in the Jackson County case involved Stamm's negligence. The evidence in the Saline County case involved a contractual dispute. The same evidence does not sustain both causes (see *Mendelson v. Lillard*, 83 Ill. App. 3d 1088, 1094 (1980)), and because the Saline County case requires essential facts to sustain its cause of action that are different from those in the case filed in Jackson County, we believe that the circuit court of Saline County erred in dismissing plaintiff's complaint under section 2—619(a)(4).

In addition, we believe that the circuit court erred in dismissing plaintiff's complaint under section 2—619(a)(3) of the Code. This section provides for the involuntary dismissal of a case if there is "another" action pending between the same parties for the same cause. 735 ILCS 5/2—619(a)(3) (West 2000). Generally, we review a circuit court's decision to dismiss pursuant to section 2—619(a)(3) under an abuse-of-discretion standard. *Crowell v. Golz*, 319 Ill. App. 3d 184, 191 (2001). As we have just stated above, not only are the parties different but the cause of action is also different in each case. Accordingly, the circuit court abused its discretion in dismissing plaintiff's complaint under section 2—619(a)(3).

Wherefore, the circuit court of Saline County's decision to grant

Allstate's motion to dismiss is hereby reversed, and we remand the cause for further proceedings on plaintiff's complaint.

No. 5—01—0077, Affirmed in part and reversed in part.
No. 5—01—0196, Reversed; cause remanded.

KUEHN and RARICK, JJ., concur.